## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS - FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSEPH FRIEDHEIM,** | § | |
| **IASMIN FRIEDHEIM, and** | § | |
| **JF SOLUTIONS LTD.,** | § | |
| *Plaintiffs/Counter-Defendants* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-335** |
| | § | |
| **THOMAS HOEBER and** | § | |
| *Defendants/Counter-Plaintiffs* | § | |
| **HÖEBER MEDIA, LLC,** | § | |
| *Defendant/Intervenor* | § | |

### PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs Joseph Friedheim, Iasmin Friedheim, and JF Solutions Ltd. come now to file this First Amended Complaint against Thomas Hoeber and Höeber Media, LLC, in which they seek a declaration regarding disputed ownership of copyrights for works created as works for hire for JF Solutions Ltd. The plaintiffs also assert claims for breach of contract and fraud associated with this dispute, including fraudulent acquisition of copyright registrations.

Plaintiffs file this amendment to add Höeber Media, LLC as a named defendant, following its intervention in the suit. Plaintiffs originally brought suit against Defendant Thomas Hoeber because Hoeber was the person hired and paid by Plaintiffs as the events of the suit began. The name of Hoeber's company name changed multiple times during the events described herein, as did his personnel, while Hoeber himself remained a constant throughout.

Plaintiffs herein clarify that their claims can be asserted against Hoeber and his business, though discovery will be necessary to determine to what extent the claims should be against Hoeber, Höeber Media, LLC, or both.

# I.   PARTIES

1.      Plaintiff/Counter-defendant **Joseph Friedheim** is an individual residing in Grapevine, Texas. He can be contacted through his counsel of record in this matter, the undersigned.

2.      Plaintiff/Counter-defendant **Iasmin Friedheim** is an individual residing in Grapevine, Texas. She can be contacted through her counsel of record in this matter, the undersigned.

3.      Plaintiff/Counter-defendant **JF Solutions, Ltd.** is a Texas limited liability company located in Grapevine, Texas which can be contacted through its counsel of record in this matter, the undersigned.

4.      Defendant **Thomas Hoeber,** a.k.a. Glasshouse Studios, Höeber Photographers, LLC, and Höeber Media, LLC, is an individual residing at 7001 Reatta Court, North Richland Hills, Texas 76182 in North Richland Hills, Texas, where he also may be served, as well as any other place he may be found.

5.      Defendant/Intervenor **Höeber Media, LLC** is a domestic limited liability company located at 2655 Myrtle Springs Ave., Dallas, Texas 75220 and may be served at that address or by its managing member, Thomas Hoeber, who resides at 7001 Reatta Ct. North Richland Hills, Texas 76182. As stated above, Defendant Thomas Hoeber has operated under many names, including Glasshouse Studios, Höeber Photographers, LLC, WELD, Matte Studio, and Höeber Media, LLC. Except when context clearly indicates otherwise, the word "Defendant" as used below refers to all of these entities interchangeably in this pleading because Thomas Hoeber has treated these organizations as alter egos in the events described herein.[1]

---

[1] Plaintiffs note that various documents use a spelling of "Höeber" that includes the umlaut and sometimes does not; the name "Thomas Hoeber" does not use an umlaut, but Hoeber appears to name his businesses to include the umlaut.

## II.    JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over the copyrighted infringement claim under 17 U.S.C. §§ 101, et seq. (the Copyright Act), 28 U.S.C. § 1331 (actions arising under U.S. law), and § 1338(a) (actions arising under the act of Congress relating to copyrights).

7.    The Court has supplemental jurisdiction over state claims under 28 U.S.C. § 1367(a), which are related to Plaintiffs' copyright infringement claim and therefore within this Court's original jurisdiction, as these claims form part of the same case and controversy under Article III of the United States Constitution.

8.    The Court has personal jurisdiction because Defendant resides in this District.

9.    Venue is properly founded in this judicial district under 28 U.S.C. §§ 1391(b) and 1400(b) because a substantial part of the events giving rise to the claims in this action occurred within the geographic area falling into the jurisdiction of the Northern District of Texas.

## III.    FACTS

10.    Plaintiffs Joseph and Iasmin Friedheim ("the Friedheims") are owners of JF Solutions, Ltd. ("JFS"), a Texas limited liability company formed in 2013. JFS is an importer of a cherry liquor manufactured by Frutobidos in Portugal.

11.    In 2015, while acquiring the state- and federally-required licenses and certifications to begin importing their product, Plaintiffs reached out to Thomas Hoeber ("Defendant" or "Hoeber") for help with graphics design, website creation, and product photography.

12.    After Hoeber failed to be useful in using software necessary to make small changes to labels provided by Frutobidos so the labels would meet government requirements, Joseph Friedheim turned to his step-son Kini Cassamo, then living in Portugal, for assistance. Cassamo

suggested his friend, Nuno Tuna, a Portuguese artist acquainted with the Friedheims, for the task. Tuna created the label art, logo, and other marketing materials for JFS in 2015.

13.     Tuna has stated in writing that the copyrights belong to JFS, as the materials he produced included an explicit statement that the copyright of all materials belonged to JFS on the documents. JFS did not file a copyright application with the Library of Congress at that time.

14.     At the least, JFS has a license to use the labels and documents which Tuna authored.

15.     JFS requested that Hoeber make small changes to their existing artwork to comply with requirements governing the sale of alcoholic beverages in the United States. These changes impacted the information on the labels but were immaterial to the aesthetic of the labels; Hoeber had no creative impact on the label art and is not a co-creator.

16.     Plaintiffs represented to Hoeber at the outset of their relationship that their budget for the required graphics design work was minimal. At the beginning, Hoeber offered to perform the work in exchange for two work tables, which Plaintiff Joseph Friedheim agreed to build for him.

17.     Over the course of the next year, the tables were completed and delivered by Joseph Friedheim. Hoeber performed some of the graphics design work promised, but not all. During this time, Hoeber expressed great interest in JFS and became friends with Plaintiffs. Thomas was told multiple times that there was no significant money available for the work he proposed, but he agreed to assist in small ways because it would be a good platform for him to show achievement and creativity and to help build his portfolio.

18.     In July and August of 2016, JF Solutions, Ltd. paid Hoeber a total of $7,000 for website development, creation of a business plan, and various other tasks. Hoeber performed some of this work, but never completed a business plan, or made significant progress on a JFS website.

19.     During this time, most of the checks for this work were written to Thomas Hoeber. One check was written to Thomas Hoeber Photo LLC. No check was written to Höeber Media, LLC.

20.     In December of 2016, Joe Friedheim and Thomas Hoeber traveled to Denver to research the market for JFS products. A few days after their return, Thomas refused to provide the information gained to Joe and angrily threatened to depart. The disagreement separated the parties for a time.

21.     Joseph Friedheim eventually created the JFS website himself, and then approached Hoeber about reviewing and revising the JFS website. Hoeber did not complete that review or clean up the site.

22.     From the beginning, Hoeber appeared to be a friend of the Friedheims and began taking on and assuming an executive role in JFS. In this role, he set up his own email address, thomas@jf.solutions in late 2018 and began corresponding on behalf of JFS using a signature indicating his position in the company as the "Executive Director of Brand Development":

**From:** Thomas Hoeber <thomas@jf.solutions>
**Subject: signature of new email read below and approve**
**Date:** August 16, 2016 at 12:04:56 PM CDT
**To:** Joe Friedheim <joe@jf.solutions>

Read below and let me know?
I will have to update all your devises with this format.

--
Jf Solutions LTD
105060 Newkirk St. Ste 408 Dallas, TX 75220
Thomas Hoeber
Executive Director of Brand Development
Tel.+1 972-215-7213
Mobile.+1 972-971-2823
Skype. thomashoeber

23.     The Friedheims did not request that Hoeber set himself up as the Executive Director of Brand Development, but they were unsurprised and did not object, as Hoeber was acting as expected in his role with JFS.

24.     On multiple occasions, Hoeber expressed frustration that he had no contract or permanent agreement with JFS. Contrary to his allegations, for example, on October 9, 2016 in a written text to Iasmine Friedheim, Hoeber stated:

> "Please don't take this personal I love you guys, but from my viewpoint I have to do what's right for me and my family. This project just does not seem like it's going very far and *no one has presented anything to me as incentive on a term or contract*. With love Thomas."

(Italics added for emphasis.)

25.     In spite of the reality that JFS had not presented a contract to him, the Friedheims enjoyed a familial relationship with Hoeber through 2017 and 2018. Thomas frequently ate dinner in their home and communicated with both of them several times a day by text and email. The Friedheims funded business trips to Denver, Houston, and Lisbon, Portugal, paying all of Hoeber's travel expenses so that he could learn more about the business. Hoeber's graphic design firm produced a few marketing materials based on the artwork previously created for the Friedheims. Hoeber's firm was paid for this work, as shown in Exhibit A. Hoeber also undertook to improve JFS's website and social media presence. Hoeber had complete access and passwords to all of the social media and domain accounts for JFS.

26.     On July 28, 2017, Hoeber stated while complaining about Iasmin to Joe, "Great message to send your producers and to *those working with you for free*." (Italics added for emphasis.)

27.     Though the Friedheims had originally hired Hoeber for website development, Hoeber never seemed to get around to performing any web development tasks. To accomplish the tasks

already given to Hoeber, the Friedheims hired two new web developers to make the improvements that they had already paid Hoeber to complete.

28.     On February 28, 2018, Hoeber offered services at no cost to JFS and Joseph Friedheim, stating in a text, "The purpose is only to have a proper brand and to hopefully sell my services to others. You benefit I benefit and it will be fun with no pressure."

29.     In June of 2018, the Friedheims again asked Hoeber for assistance with the business website, which was operating very slowly and clearly needed the attention of a professional developer. Hoeber never resolved the problem.

30.     Throughout these events, Hoeber and the Friedheims were friends and helped each other out in small ways. In 2017-2018, Joe Friedheim and Thomas Hoeber worked together on minor projects. Hoeber sought Joe's help on his French drain on June 3, 2017. Joe loaned Hoeber tools for home repair. As late as September 14, 2018, Hoeber stated, "I'm happy to roll my sleeves up on plenty of items as friends free of charge but it will be everyone's advantage to lay out the compensation and commitment to our team based on what we are about to start doing."   On October 1, 2018, Joe Friedheim assisted Hoeber with roof repair. Hoeber referred to Joe Friedheim as a mentor and father figure.

31.     In late 2018, the relationship between the parties again began to sour. Hoeber's behavior toward the Friedheims became erratic and occasionally hostile. His words and behavior toward vendors and other business contacts of JFS became more and more unprofessional. Hoeber refused to reorder business cards and product postcards when asked to do so. When asked by Joseph Friedheim to cease emailing or calling vendors, he became very upset. His emails and text messages to the Friedheims became insulting, attacking Joseph Friedheim personally.

32.     Defendants have alleged that Höeber Media's invoices had a statement that rights to the works they were creating were licensed only upon full payment of total billing. Plaintiffs never agreed to such a contract term and respond that an after-the-fact invoice is no place to add contract terms and does not, itself, represent a contract.

33.     In December of 2018, Hoeber failed to produce holiday marketing materials as agreed and the Friedheims were compelled to create the materials themselves in an unnecessarily frantic manner due to Hoeber's failure to perform.

34.     Hoeber sent an email on December 18, 2018 to Joe Friedheim in which he stated that he was moving on, saying:

> "Your current business strategy, lack of organization and ability makes it impossible for your company to succeed without a serious course correction. **Since my payment compensation is dependent on the future success of the company as Iasmin always points out to me**, I can no longer see the opportunity without a proper supported strategy in the following areas. . ."

(The text is bolded in the original). This email was followed with a similar email on December 23, 2018 in which Hoeber alleged that work on a customer relationship management system was "part of the 300 hours of work we did over the last 5 months with little to no payment."

35.     As a result of Hoeber's increasingly unacceptable behavior, the Friedheims severed ties with him and his company at the end of 2018. The Friedheims contracted with another web developer to complete the website that Hoeber had never finished.

36.     In January of 2019, Hoeber shut down the Friedheims' business website and transferred the domain name to his ownership. He began contacting the Friedheims with demands for money in payment for work he claimed he had done, holding the website and domain name hostage. The work in question had never been completed by Hoeber.

37.     Since the Friedheims were at that time paying a new contractor to do that work, they did not pay Hoeber the money he demanded. The Friedheims acquired a new domain name and proceeded with their new developer to replace the website that Hoeber had taken possession of and over which he was asserting ownership.

38.     Later in 2019, Hoeber contacted the Portuguese artist who created JFS's label artwork and asked him to "sign over" the copyrights to the label artwork. Hoeber represented the paperwork as a formality of no real consequence and the artist accepted the representation, believing Hoeber to still be both a friend of the Friedheims and an agent of JFS.

39.     The artist signed the documents provided to him by Hoeber, not realizing that Hoeber no longer worked for JFS and that the assignment he was executing was to Hoeber and not JFS.

40.     Having thus secured the copyrights through fraudulent means, Hoeber threatened the Friedheims with a civil suit, demanding to be paid for the rights to the artwork, and threatening to damage JFS's business relationships by defaming JFS and discouraging would-be purchasers of JFS's products.

41.     Hoeber formed Aqueous Spirits, LLC as a Texas limited liability company in September 2019. Plaintiffs understand that Hoeber is attempting to use contacts gained while serving JFS to compete with and damage JFS.

42.     To put an end to this dispute, JFS is developing new labels, but the artwork in question, attached as Exhibit B, was vital to JFS's ability to market and sell the products it imports. JFS should not be disallowed from using artwork it contracted and paid for.

43.     Plaintiffs filed for their own copyright certificates on the relevant works and received those certificates effective December 11, 2019, attached as Exhibit C.

44.     The Declaration of Joseph Friedheim is attached as Exhibit D and incorporated by reference as testimonial evidence in support of Plaintiffs' claims.

45.     Based on the records examined, the first time that the name "Höeber Media LLC" appears in these events is the middle of 2018. Hoeber was using the name "Glasshouse Studio" when the parties began working together in 2015, apparently as an assumed name, but Hoeber was paid checks to at least three names – Thomas Hoeber, Hoeber Productions LLC (a.k.a. Thrwd Magazine, LLC), and Höeber Media LLC.

### IV.     DECLARATION OF INVALID COPYRIGHT REGISTRATION

46.     Plaintiffs will show that Defendants committed fraud upon the Copyright Office by deliberately misleading the creator of their registered works, as discussed above, for the purpose of depriving Plaintiffs of the benefit of Plaintiffs' works, registering the works or derivative works created in the name of Höeber Media LLC.

47.     Nuno Tuna created works based on input by JFS and with the approval of JFS over their acceptability. Tuna performed his work on his own computer to be sure, but the work created was not at his sole discretion; JFS gave him specific instructions and approved the work. At best, the works he was part of were a joint work by Plaintiffs and Tuna, and even Fruitibodos, who produced the original Portuguese labels upon which Tuna's labels were based. Even if he validly assigned his interest to Hoeber Media, LLC, it is not the entire interest in the works that he assigned; JFS still has an interest, as does Fruitibodos. Even the Ginja poster of Registration No. VA 2-159-793 is a joint work using input from Fruitibodos, JFS, and Tuna. The Copyright Office would not have allowed Defendants' registrations to issue had it been aware of the inaccurate authorship deliberately and fraudulently alleged by Defendants under penalty of perjury.

48.     Defendants have alleged that Tuna was able to assign his interest because he was not paid at the time. However, Tuna had already acknowledged that the copyright was owned by JFS in the works he authored for JFS. Additionally, a debt owed to Tuna for his assistance in creating the works does not lead inexorably to the conclusion that the copyright reverted back to Tuna. At best, it would give Tuna a claim against JFS, or perhaps a constructive lien

49.     Additionally, Section 409 of the Copyright Act requires that an application based on a compilation or derivative work include an identification of any pre-existing work or works that it is based upon or incorporates, as well as a brief, general statement of the additional material covered by the copyright claim being registered. 17 U.S.C. § 409(9) (2003). Defendants failed to provide that information, making their registrations invalid.

50.     Plaintiff seeks a declaration regarding facts which can be provided to the Copyright Office and allow it to examine those facts and determine whether invalidation or amendment of Reg. No. VA 2-159-069, -066, and -793, all issued on July 16, 2109, and pursuant to 17 USC § 411(a) is appropriate.

## V.     FEDERAL TRADE SECRET UNDER 18 U.S.C. 1836(b)

51.     As stated above, Thomas Hoeber traveled with Plaintiffs to Portugal and used Plaintiffs to learn of contacts which he is now taking advantage of in order to set up competition with Plaintiffs using Aqueous Spirits, LLC.

52.     Plaintiffs allege that Hoeber always had the intention of learning what he could about JFS's business in order to compete with it, and used these trips deceptively to acquire that useful information while JFS was paying his way.

53.     Hoeber's actions constitute violations of 18 U.S.C. 1832(a)(1) and (2).

## VI.   DECLARATION UNDER TEXAS LAW

54.     Plaintiff seeks a declaratory judgment pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code, Section 37.004 of the Declaratory Judgment Act which provides that a person whose rights, status, or other legal relations are affected by contract, may have determined any question of construction or validity arising under the contract, or obtain a declaration of rights, status, or other legal relations thereunder.

55.     Defendants Hoeber and Höeber Media, LLC have claimed that JFS owes a debt. This claim does not appear to apply only to Höeber Media, LLC, as communications between counsel for the parties include complaints by Hoeber that he was taken advantage of by his volunteering to take care of the Friedheims' dog for two weeks and bringing Joseph Friedheim dinner during a medical recovery – these are not tasks that anyone could rationally say are complaints of Höeber Media, LLC. Plaintiffs seek a declaration that JFS owes Defendants nothing for any contract claim, copyright claim, fraud claim, or any other claim.

56.     Plaintiffs wish to avoid any further contact with Defendants, and reasonably want to adjudicate all claims that they are going to make now, in this suit. All Defendants must do to eliminate this threat is state that there are no such claims, and then this declaration would be for naught. But as that has not been the response, Plaintiffs seek the appropriate declaration.

## VII.   FRAUD and DECEPTIVE TRADE PRACTICES ACT UNDER TEXAS LAW

57.     Defendant deliberately misrepresented himself as an JFS agent and obtained a fraudulent copyright assignment owned by JFS. Plaintiffs have demanded that the copyright be assigned to JFS, and Defendant has refused. Plaintiffs have been damaged by the disputed copyright.

58.     Defendant's actions constitute a deceptive trade practice under Texas law, specifically Section 17.46(a), warranting damages, treble damages, and attorney fees.

## VIII.    ECONOMIC AND ACTUAL DAMAGES

59.    Plaintiffs sustained damages due to Defendant's actions and claim the following:

a.    Any profits gained by Defendant for his use of the invalid registration and infringement;

b.    A declaration that the registered copyrights claimed by Hoeber are invalid;

c.    A declaration that Hoeber was not an author or owner of any work or proper registrant of any of JFS's materials;

d.    An injunction preventing use of the stolen documents, contacts, and damages pursuant to 18 U.S.C. 1836(b)(3).

e.    A declaration that Plaintiffs owe Hoeber and Höeber Media, LLC nothing;

f.    Statutory damages, pursuant to 17 U.S.C. §504(c), trebled for willfulness; and

g.    Reasonable and necessary attorney fees pursuant to the Copyright Act.

## IX.    PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs respectfully pray that Defendant be cited to appear and answer herein and that, upon final hearing of the cause, judgment be entered for the Plaintiffs against Defendant for the economic and actual damages requested hereinabove in an amount in excess of the minimum jurisdictional limits of the Court, together with pre-judgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, costs of court, and such other and further relief to which Plaintiffs may be entitled at law or in equity, whether pled or unpled.

Respectfully submitted,

By: /s/Warren V. Norred
Warren Norred, TX Bar 24045094
Norred Law, PLLC; 515 E. Border, Arlington, TX 76010
817-704-3984 O; 817-524-6686 F
wnorred@norredlaw.com
Attorney for Plaintiffs

Attachments:
Exhibit A – Cancelled checks to for graphic designs work
Exhibit B – Label artwork package created by Nuno Tuna
Exhibit C – Copyright certificates
Exhibit D – Amended Declaration of Joseph Friedheim

# Bank of America

JF SOLUTIONS LTD.CO  |  ███████████  |  August 1, 2018 to August 31, 2018

## Check images



Check number: 1207  |  Amount: $229.21



Check number: 1216  |  Amount: $1,084.99

**Exhibit A, p.2**

Account Details Print Friendly

**Bank of America**

## Business Checking: Account Activity

Balance Summary:$47,636.38 (available as of today 08/15/2019)
View:today 08/15/2019

*OCT - NOV 18 TO HOEBER*
*PAYMENTS*

### All Transactions

| Date | Description | Status | Amount | Available Balance |
|------|-------------|--------|--------|-------------------|
| 01/03/2019 | RETURNED BILL PAYMENT FROM Hoeber Media LLC ISSUE DATE 10-03-18. | C | 34.37 | |
| 01/02/2019 | RETURNED BILL PAYMENT FROM Hoeber Media LLC ISSUE DATE 10-02-18. | C | 34.37 | |
| 11/23/2018 | HOEBER MEDIA LLC DES:SALE ID: INDN:IASMIN FRIEDHEIM CO ID:9215986202 CCD | C | -34.37 | |
| 11/07/2018 | HOEBER MEDIA LLC DES:SALE ID: INDN:IASMIN FRIEDHEIM CO ID:9215986202 CCD | C | -34.37 | |
| 11/07/2018 | HOEBER MEDIA LLC DES:SALE ID: INDN:IASMIN FRIEDHEIM CO ID:9215986202 CCD | C | -1,000.00 | |
| 10/22/2018 | HOEBER MEDIA LLC DES:SALE ID: INDN:IASMIN FRIEDHEIM CO ID:9215986202 CCD | C | -34.37 | |
| 10/22/2018 | HOEBER MEDIA LLC DES:SALE ID: INDN:IASMIN FRIEDHEIM CO ID:9215986202 CCD | C | -34.37 | |
| 10/05/2018 | HOEBER MEDIA LLC DES:SALE ID: INDN:IASMIN FRIEDHEIM CO ID:9215986202 CCD | C | -311.59 | |
| 10/03/2018 | Hoeber Media LLC Bill Payment | C | -34.37 | |
| 10/02/2018 | Hoeber Media LLC Bill Payment | C | -34.37 | |

*TOTAL 1517.81*

Exhibit B, p. 1

JFS · Vila das Rainhas Traditional - 375ml - Bottle Aluminum Neck Seal Coat



JFS · Vila das Rainhas Traditional - 375ml - Label
(silkscreen print on glass or silkscreen print on clear polypropylene sticker)



Exhibit B, p. 3

JFS · Vila das Rainhas Traditional - 375ml - Natura bottle simulation



JFS · Vila das Rainhas Traditional - 375ml - Natura bottle label placement



# Exhibit B, p. 5

JFS · Vila das Rainhas Traditional - 750ml - Cylinder Container



JFS · Vila das Rainhas Traditional - 750ml - Bottle Aluminum Neck Seal Coat



Exhibit B, p. 7

JFS · Vila das Rainhas Traditional - 750ml - Label
(silkscreen print on glass or silkscreen print on clear polypropylene sticker)



Exhibit B, p. 8

JFS · Vila das Rainhas Traditional - 750ml - Natura bottle simulation



JFS · Vila das Rainhas Traditional - 750ml - Natura bottle label placement





Vila das Rainhas Traditional Ginja
Natura bottle 750ml & 375ml

JF·SOLUTIONS
IMPORT · EXPORT

Front and back labels
Labels placement
Bottle neck seal coat
Final bottle simulations
Bottle packaging

Exhibit B, p. 11

JFS · Vila das Rainhas Traditional
750 ml Cylinder simulation





**Exhibit B, p. 12**

JFS · Vila das Rainhas Traditional
750 ml Cylinder specifications







112 mm

235 mm

JFS · Vila das Rainhas Traditional
750 ml Cylinder placement







JFS · Vila das Rainhas Traditional
375 · 750ml - Natura bottle specifications

















JFS · Vila das Rainhas Traditional

750 ml Natura bottle simulation

(silkscreen on glass or print on clear polypropylene sticker)



Exhibit B, p. 17

JFS · Vila das Rainhas Traditional
375ml Natura bottle simulation
(silkscreen on glass or print on clear polypropylene sticker)





Exhibit B, p. 18



JFS · Vila das Rainhas Traditional
750ml - Bottle Neck Plastic Seal Coat

JFS · Vila das Rainhas Traditional
375ml - Bottle Neck Plastic Seal Coat





Exhibit B, p. 20

JFS · Vila das Rainhas Traditional
750ml - Label specifications & Edge cutting
(print on clear polypropylene sticker)



Pantone
Metallic 8385 C



JFS · Vila das Rainhas Traditional
750ml – Label specifications
(silkscreen on glass)





Pantone
Metallic 8385 C



Exhibit B, p. 22

JFS · Vila das Rainhas Traditional
375ml - Label specifications & Edge cutting
(print on clear polypropylene sticker)





Pantone
Metallic 8385 C



JFS · Vila das Rainhas Traditional
375ml - Label specifications
(silkscreen on glass)





Pantone
Metallic 8385 C



JFS · Vila das Rainhas Traditional
750ml - Natura bottle label placement
(print on clear polypropylene sticker)





JFS · Vila das Rainhas Traditional
750ml - Natura bottle label placement
(silkscreen on glass)





JFS · Vila das Rainhas Traditional
375ml - Natura bottle label placement
(print on clear polypropylene sticker)





Exhibit B, p. 27



JFS · Vila das Rainhas Traditional
375ml - Natura bottle label placement
(silkscreen on glass)



# Vila das Rainhas Traditional Ginja
# Natura bottle 375ml & 750ml



JF·SOLUTIONS
IMPORT · EXPORT

Front and back labels
Label placement
Bottle neck seal coat
Final bottle simulations
Bottle specifications
Bottle packaging

Copyright © 2016 JF Solutions

Unless otherwise indicated, all materials on these pages are copyrighted by JF Solutions. All rights reserved.
No part of these pages, either text or image may be used for any purpose other than specified in writing
by JF Solutions. Therefore, reproduction, modification, storage in a retrieval system or retransmission, in any form
or by any means, electronic, mechanical or otherwise, for reasons other than specified, is strictly prohibited.

Exhibit B, p. 29

JFS · Vila das Rainhas Traditional - 375ml - Bottle Aluminum Neck Seal Coat



JFS · Vila das Rainhas Traditional - 375ml - Label
(silkscreen print on glass or silkscreen print on clear polypropylene sticker)



JFS · Vila das Rainhas Traditional - 375ml - Natura bottle simulation



JFS · Vila das Rainhas Traditional - 375ml - Natura bottle label placement



JFS · Vila das Rainhas Traditional - 750ml - Cylinder Container



JFS · Vila das Rainhas Traditional - 750ml - Bottle Aluminum Neck Seal Coat



JFS · Vila das Rainhas Traditional - 750ml - Label
(silkscreen print on glass or silkscreen print on clear polypropylene sticker)



JFS · Vila das Rainhas Traditional - 750ml - Natura bottle simulation



JFS · Vila das Rainhas Traditional - 750ml - Natura bottle label placement





Vila das Rainhas Traditional Ginja
Natura bottle 750ml & 375ml

JF·SOLUTIONS
IMPORT · EXPORT

Front and back labels
Labels placement
Bottle neck seal coat
Final bottle simulations
Bottle packaging

This presentation was  produced  in November 2015
for JF Solutions Ltd.

Text revisions by Kini Cassamo

Copyright © 2016 JF SolutionsUnless otherwise indicated, all materials
on these pages are copyrighted by JF Solutions. All rights reserved.No part
of these pages, either text or image may be used for any purpose other than
specified in writingby JF Solutions. Therefore, reproduction, modification, storage
in a retrieval system or retransmission, in any formor by any means, electronic,
mechanical or otherwise, for reasons other than specified, is strictly prohibited.

# SUPPORT MEDIA
## internet/social media

### 1. Facebook.com

This social network is an amazing promotional tool if managed correctly.

Based on basic friend networking, its potencial to communicate within a specific group of interested customers, gives you the power to communicate any direct promotional action (Fan Pages) through posts, announcing and managing events and sending private bulk messages to "likers".

With proper programming, every post on a GinjaUSA fan page will automatically create a post on Twitter.

This network requires 2 hours/week to manage for posting and "likers" answering.

You can buy a periodic promotion action by paying small amounts of money set by you.

### 2. Twitter.com

It has no special features but everyone has a Twitter account and for reasons no one understand, people do interact with it.

The Facebook/Twitter plugin allows you to be present at this platform without actually going there.

No marketing tools beside the obvious one.

### 3. Pinterest.com

Pinterest is a network for "people who like the same things" and it's basically a product catalogue.

Your message is spread by a kind of online word of mouth".

By "pinning" an entry on their own pages, users become your promoters replicating the same pin over and over.

### 4. Fancy.com (or similar)

There are a lot online product catalogues disguised as social networks. This is one of them.

You can post products with your basic free account but to have access to marketing tools there's a paid account available.

There's a Business page option available that let's you access to previleged information like demographics, and some user data.

**Note:**
All of these pages require graphic customization and some of them allow deeper personalization like backgroun images and base color change

30

# SUPPORT MEDIA
## internet/website structure

### 1. website structure

Is the premium and sole brand of producer MSR.
This is a limited production item and its target
are social graders A and eventually B.
350ml and 750ml available.



**HOME**
> Promo text and compeling set of pics
> Contacts (or contact form)

**JSF**
Institutional area about the importer
> History
> Contacts
> Team

**The Ginja**
> General product description
> Historical placement
> Production locations
> Fotos

**GINJA G**
> Presentation text
> Images
> Promo video
> composition specs
> Enology

**VILA DAS RAINHAS**
> Presentation text
> Images
> Promo video
> composition specs
> Enology

**VILA DAS RAINHAS RESERVA**
> Presentation text
> Images
> Promo video
> composition specs
> Enology

**GINJA MSR**
> Presentation text
> Images
> Promo video
> composition specs
> Enology

# SUPPORT MEDIA
## merchandising

1. T-shirts and hats
2. Key-chains and pens
3. Special pieces



## SUPPORT MEDIA
## point of sale promotion

1. Roll-up

2. Poster

3. Brand LED signage



4. Store front decoration

27

# SUPPORT MEDIA
## product labels

### 1. Ginja MSR

Is the premium and sole brand of producer MSR.
This is a limited production item and its target
are social graders A and eventually B.
350ml and 750ml available.



# SUPPORT MEDIA
## product labels

### 1. Vila das Rainhas Reserve

Is the Special reserve brand of producer Frutóbidos.

This is a controlled production item and its target are social graders A and B.

750ml bottles



**JF SOLUTIONS LTD** CORPORATE IDENTITY RESTYLE

# SUPPORT MEDIA
## product labels

### 1. Vila das Rainhas

Is the upper-level brand of producer Frutóbidos.

This is a controlled production item and its target
are social graders B and C1.

375ml and 750ml bottles.



Exhibit B, p. 47

JF SOLUTIONS LTD CORPORATE IDENTITY RESTYLE

# SUPPORT MEDIA
## product labels

### 1. Licor G

Is the entry-level entry level brand of producer Frutóbidos.

This is a mass production product and its target are 21+ students, social graders C1 and C2.

375ml and 750ml bottles available. (?) Pending new bottles and new labels approval.





# SUPPORT MEDIA
## social grade definition

### 1. target identification

This chart is a helpful tool to target and match types of consumers with products.
Be aware that this is only a reference table and products may point for two or three types of consumers.
Some social grades will be considered due to the lack of buying power.
**Students** include university, masters and post-graduate (21+).

| Ginja MSR | A+ | Wealthy upper class | Wealthy and sophisticated individuals, wine collectors an fashionistas (trend-setters) |
|---|---|---|---|
| **PRODUCT** | **SOCIAL GRADE** | **SOCIAL STATUS** | **OCCUPATION** |
| | A | upper class | higher managerial, administrative or professional |
| Vila das Rainhas Reserve | B | middle class | intermediate managerial, administrative or professional |
| Vila das Rainhas | C1 | lower middle class | supervisory or clerical, junior managerial, administrative or professional, students |
| Liquor G | C2 | skilled working class | Young professionals, students* and party-goers |
| | D | working class | semi and unskilled manual workers |
| | E | those at lowest level of subsistance | state pensioners or widows (no other earner), casual or lowest grade workers |

22

# SUPPORT MEDIA

Distributors will be in charge of promoting and selling your product with "HoReCa" (Hotel/Restaurants/Catering) channels. To ensure a proper marketing action, **JFS** will need to provide them with media support and info.

### The Catalogue/Product sheet

will display the products, a short advertising text and a list of its individual characteristics and specifications.

### A Price Chart

with recommended prices which Distributors can use to inform wholesalers, retailers and HoReCa.

### A Press-release

announcing the upcoming of new products is essential for promotion. Trend-setters, bloggers, State and National specialised media will require them in order to speak about your products knowingly. Journalists who are looking for newsworthy reports feature press releases if they find interesting events or tidbits (juicy bit of gossip or news).

This should include the Catalogue/Product Sheet, a Presentation Letter contextualising the product Ginja (origin, history, characteristics, etc...) and an Identi-Kit (a thumb drive or CD with info, product pictures and logos). This will supply the media agents with enough info to fill their articles and reviews.

### Events

can be totally sponsored or partially supported. **JFS** can promote their products by organising shows, tastings and parties in clubs or places specifically chosen for the promotional actions. Press-Releases should be distributed among selected promotional agents (media).

Parties are usually partially supported, falling to the bar paying part of the cost (distributor cost price). This can be done through Distributors, by offering one case in every two cases bought, as an example.

### Product giveaways and merchandising

must be provided to Distributors, Wholesalers and HoReCa. This can be done by producing small versions of the products and merchandising materials, such as t-shirts, caps/hats, pens or other original/exclusive promotional materials.

### P.O.S.s (Point Of Sale Promotion)

are banners, roll-ups, neon/led logo signs, etc... displaying your product or brand logos. They are usually visible in HoReCa websites. They are supplied by **JFS** and its visibility is negotiated by the Distributor.

### JFS Website (www.ginjausa.com)

the home page will work as a portal and be divided in three parts.

The first one will feature a **JFS** institutional presentation, portfolio (in the future), team and contacts. Links to Distributors will also be included.

The second will feature the **Ginja fruit and beverage**, with an introduction, historic placement and images.

The third one will display an introductory text, products and specifications, its history, etc...

*(The displayed URLs and domain names are mere examples).*

# SUPPORT MEDIA

> introduction ... 21

> social grade definition ... 22

> product labels ... 23

> point of sale promotion (POS) ... 27

> merchandising ... 28

> Internet ... 29
>    website
>    social media

# LOGO APLICATION
## block text lettering

Use the same font families for all your communication. Coherence is not just about matching colors in logo applications. All the details around it are equaly a part of the process. Using the same type face in a letterhead communication or on a store POS will also contribute to brand recognition.

Due to font copyright we advise it to be purchased at:

**ITC New Baskerville**
http://www.linotype.com/749/itc-new-baskerville-family.html

**DIN Next**
http://www.linotype.com/517415/din-next-family.html

---

**DIN Next LT Light**

ABCDEFGHIJKLMNOPKRSTUVWXYZ
abcdefghijklmnopqrstuvwxyz
1234567890 (*);/&%$#@

---

**DIN Next LT Light Italic**

*ABCDEFGHIJKLMNOPKRSTUVWXYZ*
*abcdefghijklmnopqrstuvwxyz*
*1234567890 (*);/&%$#@*

---

**New Baskerville ITC Pro Light**

*ABCDEFGHIJKLMNOPKRSTUVWXYZ*
*abcdefghijklmnopqrstuvwxyz*
*1234567890 (*);/&%$#@*

---

**New Baskerville ITC Pro Bold**

**ABCDEFGHIJKLMNOPKRSTUVWXYZ**
**abcdefghijklmnopqrstuvwxyz**
**1234567890 (*);/&%$#@**

---

**New Baskerville ITC Pro Roman**

ABCDEFGHIJKLMNOPKRSTUVWXYZ
abcdefghijklmnopqrstuvwxyz
1234567890 (*);/&%$#@

---

**New Baskerville ITC Pro Bold Italic**

***ABCDEFGHIJKLMNOPKRSTUVWXYZ***
***abcdefghijklmnopqrstuvwxyz***
***1234567890 (*);/&%$#@***

# LOGO APLICATION
## electronic mail
## signatures

E-mail communication must be standardized for all employees.

Add the essential information and avoid adding two emails or phone numbers.

Keep it short, simple and direct. If the client asks you, you can provide them later with additional information like street addresses or Messenger names.

### 1. Signature info sequence

Personal:

a) Name of the sender (bold)

b) Job position of the sender (italic)

c) E-mail of the sender

d) Direct phone of the sender

e) Skype name

Company

a) JF Solutions Logo

b) JFS landline contact (60% black)

c) JFS general e-mail (60% black)

d) JFS Website (60% black)



# LOGO APPLICATION
## special stationary

Stationary for special occasions and new business.
To adopt after October 2016.

### 3. Letterhead (8"1⁄2 X 11") ANSI A



### 1. USPS Standard Envelope (4"1/8 X 9"1/2)



### 2. Business Card (3"35 X 2"17)

 

# LOGO APPLICATION
## basic stationary

Stationary is the formal face of a brand. If you show the same aesthetic and functional dedication as you show on all your promotional pieces, it contributes for your brand positive recognition.

### 1. USPS Standard Envelope (4"1/8 X 9"1/2)



### 2. Business Card (3"35 X 2"17)




### 3. Letterhead (8"1/2 X 11") ANSI A



# LOGO APPLICATION

> basic stationary ... 15

> special stationary ... 16

> e-mail signatures ... 17

> block text lettering ... 18

# LOGO PRESENTATION
## visual integrity

### 1. visual comfort

To preserve logo integrity, always maintain a minimum clear space around the logo.

This free area visualy isolates the logo from competing graphic elements such as other logos, copywriting (text), photography or background patterns that may divert attention.

The minimum clear space for the JFSolutions logo is 1/4 of its width.



### 2. Ratio

Logo recognition is as important to a brand as good reputation is to a company's CEO.

Your audience must be able to promptly recognize your logo even if from a passing vehicle. For this reason, the logo must - among other things - maintain its size ratio.



In the above picture, the correlation between the symbol and lettering are assured.



In the above picture, there are two ratio anomalies. The first one is the unauthorized disproportion between the symbol and the lettering, and the second refers to the extended look of the ensemble.

### 3. Minimum size reduction

A quarter of an inch logo might be visible on a printed packaging or label but it will be as good as nothing if you print it on a Billboard.

The full colored logo has a high reduction rate but in the lower sizes, alterations might be required.



14

Exhibit B, p. 57

JF SOLUTIONS LTD CORPORATE IDENTITY RESTYLE

# LOGO PRESENTATION
## background applications

**1. Photographic backgrounds**

When placed over a photograph or illustration, the color of the logo may be obliterated due to background color predominance. An appropriate version must be applied, depending on the background being lighter or darker, and if they have similar logo colors.

**2. Flat colored backgrounds**

Not recomended the use of a full colored logo over a similar flat colored background.

**3. Visually aggressive backgrounds**

Not recomended visuallly doubtful color combinations that might create visual disorientation or in some cases real "color hate"..



✗ (!) The color predominance of the background interferes with the logo color.



✗ (!) The background color interferes with the logo black color.



✗ (!) The background color interferes with the logo black color.



○ (!) In this example, the use of the white color version provides sufficient contrast to the logo..



○ (!) The use of the white color version provides - most of the times - enough contrast to the logo..



○ (!) On vibrant backgrounds alwaysuse all white or black logo versions.

13

# LOGO PRESENTATION
## special colored versions

Special colored logo versions serve special occasions and clients.

1. Gold full
positive version

1. Full gold positive version



2. Full gold negative version



3. One color gold positive version



4. One color gold negative version



Exhibit B, p. 59

JF SOLUTIONS LTD CORPORATE IDENTITY RESTYLE

# LOGO PRESENTATION
## special color schemes

**CMYK** Colors are used mainly for Four Color (Process) Offset printing.
**RGB** Colors are used for Digital printing, computer displays and TV.
**Web Safe** Colors are used for internet content.
**Pantone** Colors are used for Direct Spot Color Printing.
**RAL** Colors are used for paint and coatings.





**Production Color References**



| RAL | CMYK | RGB |
|---|---|---|
| 1027 | 0, 19, 85, 33 | 172, 139, 26 |
| | Process Gold | |

| Websafe | Pantone |
|---|---|
| #999933 | Metallic 8642 |

Exhibit B, p. 60

# LOGO PRESENTATION
## official colored versions

No brand or logo is sufficiently versatile to allow its application to every graphic environment or media available on the market and for that reason, a set of application rules must be applied.

Below you will find a series of chromatic variantions for the most common situations.

In the following pages we will get you through the logo insertion to various types of backgrounds.

**1. Full color positive version**



**2. Full color negative version**



**3. One color positive version**



**4. One color negative version**



10

JF SOLUTIONS LTD CORPORATE IDENTITY RESTYLE

# LOGO PRESENTATION
## official color schemes

**CMYK** Colors are used mainly for Four Color (Process) Offset printing.
**RGB** Colors are used for Digital printing, computer displays and TV.
**Web Safe** Colors are used for internet content.
**Pantone** Colors are used for Direct Spot Color Printing.
**RAL** Colors are used for paint and coatings.



### Production Color Reference/Process gradient sequence

CMYK
100, 69, 7, 30   →   CMYK
100, 45, 14, 14   →   CMYK
Null   →

### Production Color Reference/One color gradient sequence



**Pantone**
294 C
**RGB**
0, 47, 108
**Web Safe**
#003366
**RAL**
5002

**Pantone**
White C
**RGB**
255, 255, 255
**Web Safe**
#FFFFFF
**RAL**
9016

# LOGO PRESENTATION
## lettering

**Note:**

Due to font copyrights we advise its purchase. You can find clickable links on page 19 of this presentation



**JF·SOLUTIONS**

IMPORT · EXPORT

New Baskerville ITC Pro Roman

ABCDEFGHIJKLMNOPKRSTUVWXYZ
abcdefghijklmnopqrstuvwxyz
1234567890 (*);/&%$#@

DIN Next LT Light

ABCDEFGHIJKLMNOPKRSTUVWXYZ
abcdefghijklmnopqrstuvwxyz
1234567890 (*);/&%$#@

8

**JF SOLUTIONS LTD** CORPORATE IDENTITY RESTYLE

# LOGO PRESENTATION
## logo build and ratio



Exhibit B, p. 64

# LOGO PRESENTATION

> logo build and ratio ... 7

> lettering ... 8

> official color schemes ... 9

> official colored versions ... 10

> special color schemes ... 11

> special colored versions ... 12

> background applications ... 13

photographic backgrounds
flat colored backgrounds
visually aggressive backgrounds

> visual integrity ... 14

visual comfort
ratio
minimum size reduction

# INTRODUCTION
## previous logo

The previous **JFSolutions** logo had a serious communication issue that prevented the audience from spelling the company's name correctly. The oversized **S** between the "J" and "F" initials incorrectly leads to the misspell of the acronym.

Moreover, by displaying "J**S**F" in the logo above the company name "JF Solutions Ltd. Co." - and because most people are visual and tend to reproduce verbally what they see - it leads to an involuntary repetition of the keyword: J**S**F Solutions.



# INTRODUCTION
## company profile

**JFSolutions**

is an Import/Export company owned by Joe Friedheim.

Mr. Friedheim made his career in the aviation industry dealing with government contracts and developed a long experience in this field. His newly founded company - **JFS** - is starting activities in the food & beverages market by importing exclusive representations of a traditional Portuguese beverage.

Mr. Friedheim was introduced to Ginja liquor by the hand of his wife Iasmin when visiting family in Portugal. Due to this product's quality and historic value, the couple soon realized of a potential business opportunity in the U.S.

**JFS** will be trading four premium quality brands through selected distributors across the U.S.A., Canada and Mexico.

Now, this company will face a greater public exposure throughout packaging, promotional print and web graphic material. Therefore, a redesign is mandatory to allow **JFS** to compete in a fierce and more visual market.

This new graphic identity must reflect modernity and style without loosing **JFS** core values and reputation.

*Kini Friedheim*

4

Exhibit B, p. 67

# INTRODUCTION

> company profile ... 4

> previous logo ... 5

Exhibit B, p. 68

# CONTENTS

> INTRODUCTION ... 3

> LOGO PRESENTATION ... 6

> LOGO APPLICATION ... 15

> SUPPORT MEDIA ... 20

Exhibit B, p. 69

2015 NOV

# JF SOLUTIONS LTD
## CORPORATE
## IDENTITY
## RESTYLE

v.1 · Nov 2015

**Exhibit C, p. 1**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Kay H. Tesla*

United States Register of Copyrights and Director

**Registration Number**

## VA 2-182-743

**Effective Date of Registration:**
December 11, 2019
**Registration Decision Date:**
December 13, 2019

---

## Title

**Title of Work:** JF Solutions' LTD Corporate Identity Restyle

## Completion/Publication

**Year of Completion:** 2015
**Date of 1st Publication:** December 31, 2015
**Nation of 1st Publication:** United States

## Author

- **Author:** Joseph Friedheim
  **Author Created:** 2-D artwork
  **Work made for hire:** Yes
  **Citizen of:** United States

## Copyright Claimant

**Copyright Claimant:** Joseph Friedheim
3541 High Countryside Dr, Grapevine, TX, 76051, United States

## Rights and Permissions

**Organization Name:** Norred Law, PLLC
**Email:** wnorred@norredlaw.com
**Telephone:** (817)704-3984
**Address:** 515 E. Border St
Arlington, TX 76010 United States

## Certification

**Name:** Warren V. Norred

Page 1 of 2

**Date:** December 11, 2019
**Applicant's Tracking Number:** JFS-01

**Copyright Office notes:** Basis for Registration: Collective work.

Exhibit C p. 3

**Registration #:**   VA0002182743
**Service Request #:**   1-8340392391



Norred Law, PLLC
Warren V. Norred
515 E. Border St
Arlington, TX 76010 United States

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS - FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JOSEPH FRIEDHEIM, IASMIN FRIEDHEIM, and JF SOLUTIONS LTD.**<br>  *Plaintiffs,* | §<br>§<br>§<br>§ | |
| **v.** | §<br>§ | **Civil Action No. 4:20-cv-335** |
| **THOMAS HOEBER and HÖEBER MEDIA, LLC,**<br>  *Defendants.* | §<br>§<br>§<br>§ | |

**AMENDED DECLARATION OF JOSEPH FRIEDHEIM**

Pursuant to 28 U.S. CODE § 1746, I make the following declaration:

1.      "My name is Joseph Franklin Friedheim, my date of birth is July 11, 1951, and my address is 3541 High Countryside Dr., Grapevine, TX 76051, U.S.  I am of sound mind and have never been convicted of a crime of moral turpitude. The statements made in this declaration are true and are made with personal knowledge.

2.      I have read *Plaintiffs' Second Amended Complaint* ("Amended Complaint") to which this declaration is attached as Exhibit D. I verify that the facts presented in paragraphs 10 through 45 of the Amended Complaint are true and correct.

3.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct."

Executed in Tarrant County, State of Texas on August 10, 2020.

JOSEPH FRIEDHEIM, DECLARANT