**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **JOSEPH FRIEDHEIM, IASMIN FRIEDHEIM, and JF SOLUTIONS, LTD.,** | § § § § | |
| **Plaintiffs/Counter-Defendants** | § § | |
| **v.** | § § | **Civil Action No.  4:20-cv-00335-O** |
| **THOMAS HOEBER,** | § § | |
| **Defendant, and** | § § | |
| **HÖEBER MEDIA, LLC,** | § § | |
| **Defendant/Intervenor-Plaintiff.** | § | |

## ORDER

Before the Court is Höeber Media, LLC's and Thomas Hoeber's Motion to Dismiss Second Amended Complaint (ECF No. 21), filed August 24, 2020. Having considered the motion, response, reply, pleadings, record, and applicable law, the Court finds that the motion should be **GRANTED in part** and **DENIED in part**.

## I.     BACKGROUND

This case arises from a dispute over the ownership of registered copyrights to the label design and artwork on bottles of cherry liquor imported from Portugal. Plaintiffs Joseph and Iasmin Friedheim (the "Friedheims") and their company JF Solutions, Ltd. ("JFS") (sometimes collectively, "Plaintiffs"), seek a declaration as to the invalidity of the copyright registration to the label design and artwork obtained by Intervenor-Plaintiff Höeber Media, LLC ("Höeber

Media) and its owner, Thomas Hoeber ("Hoeber"), and also bring a claim for misappropriation of trade secrets and various claims under state law.[1]

Intervenor-Plaintiff Höeber Media alleges Plaintiffs willfully infringed its registered copyrights and seeks invalidation of Plaintiffs' allegedly fraudulently procured copyright registrations. Höeber Media also brings claims against Plaintiffs for fraud and unjust enrichment.

The Court now sets forth the background facts, accepting as true all well-pleaded facts in Plaintiffs' Second Amended Complaint, the live pleading, and drawing all reasonable inferences in Plaintiffs' favor.[2]

### A.   The Parties

Plaintiffs are the Friedheims, who reside in Grapevine, Texas, and JFS, a Texas limited liability company they formed in 2013. Pls.' Sec. Am. Compl. ¶ 12, ECF No. 18. JFS is in the business of importing cherry liquor manufactured by Frutobidos in Portugal. *Id.* Intervenor-Plaintiff Höeber Media, a limited liability company located in Dallas, Texas, is an advertising and visual content creation company focused on photography, CGI, visual effects, commercial advertising, social media, videography, and small production motion pictures. Intervenor's Orig. Compl. ¶ 9, ECF No. 11. Defendant Hoeber, who resides in North Richland Hills, Texas, is the sole managing member of Höeber Media. Pls.' Sec. Am. Compl. ¶ 5, ECF No. 18.

### B.   Hoeber's Involvement with the Friedheims and JFS (2015 - Late 2018)

In 2015, while acquiring the licenses and certifications to begin importing cherry liquor manufactured by Frutobidos, the Friedheims reached out to Hoeber for help with graphics design,

---

[1] Although the spelling of "Höeber Media" includes an umlaut in the parties' filings, "Thomas Hoeber" does not. The Court will similarly only use an umlaut when referring to the entity, but not the individual.

[2] The Court notes that Plaintiffs' Second Amended Complaint is verified. *See* Declaration of Joseph Friedheim, Pls.' Sec. Am. Compl. Ex. D.

website creation, and product photography. *Id.* ¶ 11. "After Hoeber failed to be useful in using software necessary to make small changes to labels provided by Frutobidos so the labels would meet government requirements, Joseph Friedheim turned to his step-son Kini Cassamo ("Cassamo"), then living in Portugal, for assistance." *Id.* ¶ 12. Cassamo suggested his friend, Nuno Tuna ("Tuna"), a Portuguese artist acquainted with the Friedheims, for the task. *Id.* Tuna created the label art, logo, and other marketing materials for JFS in 2015. *Id.* JFS did not file a copyright application with the Library of Congress at that time. *Id.* ¶ 13.

Thereafter, JFS requested that Hoeber make small changes to their existing artwork to comply with requirements governing the sale of alcoholic beverages in the United States. *Id.* ¶ 15. These changes impacted the information on the labels but were immaterial to the aesthetic of the labels. Plaintiffs allege that "Hoeber had no creative impact on the label art and is not a co-creator." *Id.*

Plaintiffs represented to Hoeber at the outset of their relationship that their budget for the required graphics design work was minimal. *Id.* ¶ 16. At the beginning, Hoeber offered to perform the work in exchange for two work tables, which Plaintiff Joseph Friedheim agreed to build for him. *Id.* Over the course of the next year, Joseph Friedheim completed and delivered the tables to Hoeber. *Id.* ¶ 17. Hoeber performed some of the graphics design work promised, but not all. *Id.* "During this time, Hoeber expressed great interest in JFS and became friends with the Friedheims." *Id.* The Friedheims told Hoeber "multiple times that there was no significant money available for the work he proposed, but he agreed to assist in small ways because it would be a good platform for him to show achievement and creativity and to help build his portfolio." *Id.*

In July and August of 2016, JFS paid Hoeber a total of $7,000 for website development, creation of a business plan, and various other tasks. *Id.* ¶ 18. Hoeber performed some of this work, but never completed a business plan, or made significant progress on a JFS website. *Id.*

In December of 2016, Joseph Friedheim and Hoeber traveled to Denver to research the market for JFS products. *Id.* ¶ 20. A few days after their return, Hoeber refused to provide the information gained to Joseph Friedheim and angrily threatened to depart. *Id.* The disagreement separated the parties for a time. *Id.* Joseph Friedheim eventually created the JFS website himself, and then approached Hoeber about reviewing and revising it. *Id.* ¶ 21. "Hoeber did not complete that review or clean up the site." *Id.*

"From the beginning, Hoeber appeared to be a friend of the Friedheims and began taking on and assuming an executive role in JFS." *Id.* ¶ 23.  In this role, he set up his own e-mail address, thomas@jf.solutions in late 2018 and began corresponding on behalf of JFS using a signature indicating his position in the company as the "Executive Director of Brand Development." *Id.*

Although JFS never entered into a formal contractual agreement with Hoeber, the Friedheims "enjoyed a familial relationship with Hoeber through 2017 and 2018." *Id.* ¶ 25. Plaintiffs allege Hoeber frequently ate dinner in their home and communicated with both of them several times a day by text and e-mail. The Friedheims funded business trips to Denver, Houston, and Lisbon, Portugal, paying all of Hoeber's travel expenses so that he could learn more about the business. *Id.* Hoeber's graphic design firm produced a few marketing materials based on the artwork previously created for the Friedheims, and Plaintiffs paid him for this work. *Id.* and Ex. A thereto. Hoeber also sought to improve JFS's website and social media presence. *Id.* Hoeber had complete access and passwords to all of JFS's social media and domain accounts. *Id.*

Throughout these events, Hoeber and the Friedheims were friends and helped each other in small ways. *Id.* ¶ 30. On September 14, 2018, Hoeber stated, "I'm happy to roll my sleeves up on plenty of items as friends free of charge but it will be everyone's advantage to lay out the compensation and commitment to our team based on what we are about to start doing." *Id.* On October 1, 2018, Joseph Friedheim assisted Hoeber with roof repair. Hoeber referred to Joseph Friedheim as a mentor and father figure. *Id.*

### C.     The Relationship Between the Friedheims and Hoeber Sours

"In late 2018, the relationship between the parties again began to sour." *Id.* ¶ 31. Hoeber's behavior toward the Friedheims became erratic and occasionally hostile. *Id.* "His words and behavior toward vendors and other business contacts of JFS became more and more unprofessional." *Id.* "His emails and text messages to the Friedheims became insulting, attacking Joseph Friedheim personally." *Id.*

On December 18, 2018, Hoeber sent an e-mail to Joseph Friedheim in which he stated he no longer wished to be involved with Plaintiffs. *Id.* ¶ 34. This e-mail was followed with a similar e-mail on December 23, 2018 in which Hoeber stated that work on a customer relationship management system was "part of the 300 hours of work we did over the last 5 months with little to no payment." *Id.*

As a result of Hoeber's increasingly unacceptable behavior, the Friedheims severed ties with him and his company at the end of 2018. *Id.* ¶ 35. The Friedheims contracted with another website developer to complete the website that Hoeber had never finished. *Id.*

In January of 2019, Hoeber, who still had access to the Friedheims' business domain, shut down the JFS website and transferred the domain name to his ownership. *Id.* ¶ 36. "He began contacting the Friedheims with demands for money in payment for work he claimed he had done,

holding the website and domain name hostage." *Id.* "Since the Friedheims were at that time paying a new contractor to do that work, they did not pay Hoeber the money he demanded." *Id.* ¶ 37. The Friedheims acquired a new domain name and proceeded with their new developer to replace the website that Hoeber had taken possession of and over which he was asserting ownership." *Id.*

### D.   Assignment of the Copyrights from Tuna to Hoeber

Later in 2019, Hoeber contacted Tuna—the Portugese artist that had developed the label design for the cherry liquor for the Friedheims in 2015—and asked him to "sign over" the copyrights to the label artwork. *Id.* ¶ 38. "Hoeber represented the paperwork as a formality of no real consequence and the artist accepted the representation, believing Hoeber to still be both a friend of the Friedheims and an agent of JFS." *Id.* "Tuna signed the documents provided to him by Hoeber, not realizing that Hoeber no longer worked for JFS and that the assignment he was executing was to Hoeber and not JFS." *Id.* ¶ 39. "Having thus secured the copyrights through fraudulent means, Hoeber threatened the Friedheims with a civil suit, demanding to be paid for the rights to the artwork, and threatening to damage JFS's business relationships by defaming JFS and discouraging would-be purchasers of JFS's products." *Id.* ¶ 40.[3]

In September 2019, Hoeber formed Aqueous Spirits, LLC, a Texas limited liability company. *Id.* ¶ 41. Plaintiffs allege Hoeber is attempting to use contacts gained while serving JFS to compete with and damage JFS. *Id.* Plaintiffs further allege that to end this dispute, JFS is developing new labels. *Id.* ¶ 42. Plaintiffs allege that the artwork and label designs created by Tuna, attached as Exhibit B to the Second Amended Complaint, are "vital to JFS's ability to

---

[3] According to the Original Intervenor's Complaint, after the assignment from Tuna, Höeber Media filed for copyright registration. Orig. Intervenor's Compl. ¶ 52. On July 16, 2019, Höeber Media was granted copyright registration for the artwork on the bottles of cherry liquor sold by JFS. *Id.*

market and sell the products it imports." *Id.* Plaintiffs contend "JFS should not be disallowed from using artwork it contracted and paid for." *Id.*

### E.    Plaintiff Joseph Friedheim Files Copyright Certifications

Ultimately, Plaintiff Joseph Friedheim filed for his own copyright certificates on the relevant works and received those certificates of registration effective December 11, 2019. *Id.* ¶ 43. Those copyright certifications of registration are attached as Exhibit C to the Second Amended Complaint.

### F.    The Instant Litigation

On April 13, 2020, Plaintiffs filed this lawsuit against Hoeber, alleging copyright infringement and seeking a declaration that the registered copyrights claimed by Hoeber are invalid and a declaration that Hoeber is not an author or co-owner of any JFS materials or works. *See* Orig. Compl., ECF No. 1.

On July 7, 2020, Höeber Media filed Intervenor's Original Complaint, alleging Plaintiffs willfully infringed its copyrights and seeking invalidation of Plaintiffs' allegedly fraudulently procured copyright registrations. *See* Intervenor's Orig. Compl., ECF No. 11. Höeber Media contends that Tuna, the Portuguese artist who created the design labels and artwork for JFS in 2015, was never an employee of JFS, and, upon information and belief, there was no valid work for hire agreement between Tuna, on the one hand, and either Joseph Friedheim or JFS, on the other. Höeber Media contends that Joseph Friedheim's copyright registration would not have issued had the Copyright Office known that it covered material that was previously registered to it, and that Joseph Friedheim is claiming in his own name as a work for hire when in fact the covered material was created by independent contractors working for his company rather than him personally. In addition, Höeber Media also brings claims for fraud and unjust enrichment. It seeks

to recover actual damages plus the profits attributable to the alleged infringement, as well as exemplary damages, costs, and reasonable attorney's fees.

On August 10, 2020, Plaintiffs filed their Second Amended Complaint, the live pleading, adding Intervenor Höeber Media as a defendant, adding a claim for misappropriation of trade secrets under the Defense Trade Secrets Act ("DTSA") of 2016, codified at 18 U.S.C. § 1836, and dropping their copyright infringement claim. *See* Pls.' Sec. Am. Compl., ECF No. 18. In addition to their request for a declaration that Höeber Media's copyright registrations are invalid and that Hoeber is not an author or co-owner of any JFS materials or works, Plaintiffs also assert claims for fraud and violations of the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 1750, and seek a declaration under the Texas Declaratory Judgment Act that they are not liable to Hoeber or Höeber Media on the claims set forth in Intervenor's Original Complaint. Plaintiffs seek recovery of any profits gained by Defendants for their use of the invalid registrations, statutory damages, as well as costs and reasonable attorney's fees.

On August 24, 2020, Defendants Hoeber and Höeber Media filed their motion to dismiss Plaintiffs' Second Amended Complaint, arguing that Plaintiffs failed to state a claim under Federal Rule of Civil Procedure 12(b)(6) and failed to allege fraud with the requisite particularity required by Federal Rule of Civil Procedure 9(b). The motion has been fully briefed and is ripe for disposition.

## II.   LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).

### B. Federal Rule of Civil Procedure 9(b)

The heightened pleading standard for allegations of fraud or mistake requires a plaintiff to plead "with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). To satisfy the particularity standard of Rule 9(b), a plaintiff generally must "plead the time, place, and contents of the false representation and the identity of the person making the representation." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014) (citing *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). "Knowledge need not be pled with particularity under Rule 9(b); it need only be pled plausibly pursuant to Rule 8." *Id.* (citing *Iqbal*, 556 U.S. at 686–87).

The particularity standard requires, at a minimum, "that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)). While a plaintiff may allege fraud based upon information and belief in instances where the "facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the plaintiff must still set forth the factual basis for his belief." *Id.* at 454. Furthermore, the Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker,

state when and where the statements were made, and explain why the statements were fraudulent."

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)).

## III.   ANALYSIS

Thomas Hoeber and Höeber Media argue that Plaintiffs fail to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) and fail to plead fraud with the requisite particularity under Federal Rule of Civil Procedure 9(b). Plaintiffs counter that they plausibly pleaded several bases for redress and relief and have alleged fraud with sufficient particularity.

After reviewing the Second Amended Complaint, motion to dismiss, response, and  reply, and for the reasons that follow, the Court finds that Plaintiffs have failed to state a claim for misappropriation of trade secrets and for declaratory relief under Texas law. With respect to Plaintiffs' request for a declaration that Höeber Media's copyright registration is invalid because of fraud on the copyright office and its DTPA claim, however, the Court finds Plaintiffs have stated plausible claims for purposes of defeating a Rule 12(b)(6) motion to dismiss and have alleged fraud with the requisite particularity for purposes of defeating a Rule 9(b) motion to dismiss.

### A.    Plaintiffs' Request for a Declaration that Höeber Media's Registrations are Invalid and Unenforceable (Fraud on the Copyright Office)

In the Second Amended Complaint, Plaintiffs seek a declaration that Höeber Media's copyright registrations to the label designs and artwork on the bottles of cherry liquor are invalid and unenforceable because Hoeber and Höeber Media committed fraud on the Copyright Office.

"Fraud on the Copyright Office is not an independent claim but, rather, an attack on the prima facie validity provided under Section 410(c)." 5 William Patry on Copyright § 17:1265,

Fraud on the Copyright Office; *see also Lennon v. Seaman*, 84 F.Supp.2d 522, 525 (S.D.N.Y. 2000) ("An allegation of fraud on the Copyright Office is typically brought in an infringement action as an affirmative defense to the enforcement of a registered copyright certificate."). "Nonetheless, some courts have permitted claims for declaratory judgment that a copyright is invalid based on fraud on the copyright office." *Gomba Music, Inc. v. Avant*, 62 F. Supp. 3d 632, 642 (E.D. Mich. 2014) (collecting cases); *see, e.g.*, *Shirokov v. Dunlap, Grubb & Weaver, PLLC*, No. 10–12043, 2012 WL 1065578, at *31 (D. Mass. Mar. 27, 2012) (rejecting the defendants' argument that claim for fraud on the Copyright Office was not a recognized independent cause of action and should be dismissed and finding that "although Shirokov may seek a declaration that Achte's copyright is invalid based on fraud on the Copyright Office, he cannot seek damages against the defendants on that basis.").

In this case, Plaintiffs allege a fraud on the Copyright Office not as a defense to the enforcement of a copyright, but as a cause of action seeking declaratory relief. Defendants do not make any argument in support of dismissal that Plaintiffs' fraud-on-the-Copyright-Office claim is not cognizable as an independent cause of action. As such, the Court will follow those courts that allow a claim declaratory judgment that a copyright is invalid based on fraud on the Copyright Office. *But see Vaad L'Hafotzas Sichos, Inc. v. Krinsky*, 133 F. Supp. 3d 527, 537 (E.D.N.Y. 2015) (rejecting a party's request for "affirmative relief in the form of cancellation of the registration . . . [because] 'there is no precedent supporting the use of a claim for fraud on the Copyright Office as an affirmative cause of action'" (quoting *Kwan v. Schlein*, 2008 WL 4755345, *2 (S.D.N.Y. Oct. 30, 2008))).

The party alleging fraud on the Copyright Office must establish that "(1) the application for copyright registration is factually inaccurate; (2) those inaccuracies were willful or deliberate;

and (3) the Copyright Office relied on those misrepresentations." *Haas Outdoors, Inc. v. Dryshod Int'l, LLC*, No. 1:18-CV-596-RP, 2020 WL 555385, at *11 (W.D. Tex. Feb. 4, 2020) (citation omitted). "There must be a showing of 'scienter' in order to invalidate a copyright registration." *Id.* (quoting *Interplan Architects, Inc. v. C.L. Thomas, Inc.*, No. 4:08-CV-03181, 2010 WL 4366990, at *24 (S.D. Tex. Oct. 27, 2010)); *see also* 17 U.S.C. § 411 ("A certificate of registration satisfies the requirements of this section and section 412, regardless of whether the certificate contains any inaccurate information, unless . . . the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate."). "[A] misstatement or clerical error in the registration application if unaccompanied by fraud will not invalidate the copyright nor render the registration certificate incapable of supporting an infringement action." *Interplan Architects, Inc.*, 2010 WL 4366990, at *24 (citing 2 M. Nimmer & D. Nimmer, Copyright § 7.20[B] at 7–208, § 7.18[C][1] at 7–201 (2000)).

Plaintiffs' request for a declaration of copyright invalidity and fraud on the Copyright Office is supported by, among other things, allegations that Hoeber committed fraud in order to secure the copyright registration for the label design and artwork on JFS's bottles of cherry liquor. *See. e.g.*, Pls.' Sec. Am. Compl. ¶ 38. Plaintiffs allege that in late 2019, after Hoeber's relationship with the Friedheims deteriorated and they severed ties with him, Hoeber contacted the Portuguese artist who created JFS's label artwork and asked him to sign over the copyrights to the label artwork. Plaintiffs allege Hoeber represented to Tuna that the paperwork was a formality of no real consequence and the artist accepted the representation, believing Hoeber to still be both a friend of the Friedheims and acting as an agent of JFS. *See id.* Thereafter, Höeber Media applied for, and received, copyright registrations to the label design and artwork in question. *Id.*

Defendants move to dismiss Plaintiffs' request for a declaration invalidating Höeber Media's registration based on fraud on the Copyright Office. Defendants contend that Hoeber lacked a duty to disclose to Tuna that he was not acting as JFS's agent when he requested assignment of the copyright to the design labels and artwork from Tuna. Defendants also argue that Plaintiffs fail to allege intent. In opposition, Plaintiffs maintain they have sufficiently alleged a duty to disclose and scienter. The Court agrees.

In order to make out a claim for fraud by omission, a plaintiff must show that a party with a duty to disclose

> (1) conceals or fails to disclose a material fact within the knowledge of that party; (2) knows the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) intends to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

*Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 744 (N.D. Tex. 2014) (Boyle, J.). Fraud by nondisclosure is a subcategory of fraud and occurs "when a party has a duty to disclose certain information and fails to disclose it." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219 (Tex. 2019) (citing *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997)). "In general, there is no duty to disclose without evidence of a confidential or fiduciary relationship." *Id.* at 220 (citing *Insurance of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998)). "A fiduciary duty arises as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships." *Id.* (citation and quotation marks omitted). "A confidential relationship is one in which the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Id.* (citations and quotation marks omitted). "An informal relationship giving rise to a duty may also be formed from a moral, social, domestic or purely personal relationship of trust and

confidence." *Id.* (citations and quotation marks omitted). Further, "[t]here may also be a duty to disclose when the defendant: (1) discovered new information that made its earlier representation untrue or misleading; (2) made a partial disclosure that created a false impression; or (3) voluntarily disclosed some information, creating a duty to disclose the whole truth." *Id.* (citations omitted); *see also Hoffman*, 23 F. Supp. 3d at 745 (noting that "[w]hether a party has a duty to disclose information will depend on the circumstances") (citing *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App.—Houston (14th Dist.) 1997, writ denied)).

Drawing all reasonable inferences in Plaintiffs' favor, the Court concludes Plaintiffs have alleged facts sufficient to defeat Defendants' Rule 12(b)(6) motion. Plaintiffs allege that Hoeber made a partial disclosure when he requested assignment of the copyright registrations from Tuna, representing to him that the paperwork was a formality of no real consequence, thereby creating a false impression that he was acting as JFS's agent to induce Tuna to sign over the copyright. As such, Plaintiffs contend Hoeber had a duty to disclose to Tuna that he was not actually an agent of JFS, but Hoeber failed to do so. Additionally, Plaintiffs have alleged sufficient facts concerning the business and personal relationship of trust and confidence over the many years between the Friedheims and Hoeber as to potentially give rise to a duty to disclose, depending on the evidence that develops as the case progresses. *See Bombardier Aerospace Corp.*, 572 S.W.3d at 219; *see also CBE Grp., Inc. v. Heath*, No. 3:17-cv-2594-L, 2020 WL 584620, at *9 (N.D. Tex. Feb. 6, 2020) (recognizing that under Texas law "an informal relationship giving rise to a duty may also be formed from a moral, social, domestic or purely personal relationship of trust and confidence.") (citation omitted). Whether Hoeber had a duty to disclose may be revisited at the summary-judgment phase.

Defendants also contend Plaintiffs failed to allege that Defendants' fraud on the Copyright Office was intentional. The Court disagrees. Plaintiffs allege that they "will show that Defendants committed fraud upon the Copyright Office by deliberately misleading the creator of their registered works [Tuna]." Pls.' Sec. Am. Compl. ¶ 46. Although not artfully pleaded, the Court concludes these allegations of intent, coupled with the allegations discussed previously concerning Hoeber's failure to disclose he was not acting as JFS's agent, are sufficient at the motion-to-dismiss stage.

Defendants also seek dismissal under Rule 9(b), contending that Plaintiffs' allegations of purported misrepresentations and omissions are not pleaded with particularity. For instance, Defendants take issue with Plaintiffs' use of the term "Portuguese artist," and contend Rule 9(b) requires identification of the artist's name. In paragraph 12 of Plaintiffs' Second Amended Complaint, however, Plaintiffs explicitly refer to Tuna as "Nuno Tuna, a Portuguese artist acquainted with the Friedheims [who created] the label art, logo, and other marketing materials for JFS in 2015." *See* Sec. Am. Compl. ¶ 12. Viewing the pleadings in their entirety, the Court concludes there is no ambiguity regarding the identity of the "Portuguese artist" in question, and Rule 9(b) requires no more in this instance.

The Court concludes that Plaintiffs have satisfied their obligation to plead nonconclusory facts that "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Dorsey*, 540 F.3d at 339 (quoting *Herrmann Holdings*, 302 F.3d at 564-65). While Defendants may disagree with Plaintiffs' characterization of the events leading to Tuna's assignment of the copyrights at issue to Hoeber, Rule 9(b) is not an appropriate vehicle for a merits resolution of that dispute.

- 16 -

Accordingly, the Court will deny Defendants' motion to dismiss the fraud allegations in the Second Amended Complaint for lack of particularity under Rule 9(b).

> **B.      Violations of the DTPA**

Defendants contend "Plaintiffs' Deceptive Trade Practices Act claims fail for the same reason as the fraud claim. Without a duty to disclose—which has not been alleged—Plaintiffs cannot make out a claim for fraud. If there was no fraud as a matter of law, there was no deceptive trade practice." Defs.' Reply 8, ECF No. 23. The Court has already denied Defendants' motion to dismiss Plaintiffs' request for a declaration as to the invalidity of Höeber Media's copyright registrations based on fraud on the Copyright Office. As Defendants make the same arguments in support of their motion to dismiss Plaintiff's DTPA claim that the Court previously rejected, *see supra*, the Court will deny the motion to dismiss the DTPA claims for the same reasons.

> **C.      Misappropriation of Trade Secrets under 18 U.S.C. § 1836(b)**

Defendants also move to dismiss Plaintiffs' claim for misappropriation of trade secrets for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In support of their claim for misappropriation of trade secrets, Plaintiffs allege "Thomas Hoeber traveled with Plaintiffs to Portugal and used Plaintiffs to learn of contacts which he is now taking advantage of in order to set up competition with Plaintiffs using Aqueous Spirits, LLC." Pls.' Sec. Am. Compl. ¶ 51. Plaintiffs further allege that "Hoeber always had the intention of learning what he could about JFS's business in order to compete with it and used these trips deceptively to acquire that useful information while JFS was paying his way." *Id.* ¶ 52. Even assuming the truth of these allegations, Plaintiffs fail to state a claim for misappropriation of trade secrets under the DTSA.

A "trade secret" under the DTSA includes scientific and technical information that "the owner thereof has taken reasonable measures to keep . . . secret" and "derives independent

economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). The Fifth Circuit has held that "[a] trade secret 'is one of the most elusive and difficult concepts in the law to define.'" *Tewari De-Ox Sys., Inc. v. Mountain States/Rosen, L.L.C.*, 637 F.3d 604, 613 (5th Cir. 2011) (quoting *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 288 (5th Cir. 1978)). "Whether something is a trade secret is a question of fact." *CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 796 (E.D. La. 2012) (citations omitted). "[T]he question of whether certain information constitutes a trade secret ordinarily is best 'resolved by a fact finder after full presentation of evidence from each side.'" *Tewari De-Ox Sys.*, 637 F.3d at 613 (quoting *Lear Siegler*, 569 F.2d at 289). Moreover, "[t]he efforts required to maintain secrecy are those reasonable under the circumstances, and courts do not require extreme and unduly expensive procedures to be taken to protect trade secrets." *CheckPoint Fluidic Sys. Int'l*, 888 F. Supp. 2d at 796-97 (quoting *Sheets v. Yamaha Motors Corp., U.S.A.*, 849 F.2d 179, 183 (5th Cir. 1988)).

        In support of their motion to dismiss Plaintiffs' claim for misappropriation of trade secrets, Defendants argue that Plaintiffs have not alleged that they took "reasonable measures" or any measures to keep any of their information secret. *See* Pls.' Sec. Am. Compl. ¶¶ 10–45. Instead, Plaintiffs allege that they freely gave Hoeber the information. *Id.* ¶¶ 24-25.

        Having carefully reviewed the allegations in the Second Amended Complaint and the parties' legal arguments, the Court concludes that Plaintiffs fail to adequately allege a claim for misappropriation of trade secrets under the DTSA. In addition to failing to allege they took any measures to keep information secret, in opposition to Defendants' motion to dismiss, Plaintiffs do not point to any allegations in the Second Amended Complaint from which the Court can

reasonably infer that they took any measures to protect any of their business information, such as a confidentiality agreement, formal or otherwise, between Plaintiffs and Hoeber. In addition, Plaintiffs mistakenly cite to 18 U.S.C. § 1832, which is a criminal statute. *See* Sec. Am. Compl. § 53. Accordingly, the Court will grant Defendants' motion to dismiss Plaintiffs' claim for misappropriation of trade secrets.

### D.      Texas Declaratory Judgment Act

Plaintiffs seek declaratory relief under the Texas Declaratory Judgment Act, located in Chapter 37 of Texas Civil Practice and Remedies Code. The Fifth Circuit has held that the Texas Declaratory Judgment Act is a procedural rule that does not apply in federal court. *See Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998). When a declaratory judgment action filed in state court is removed to federal court, some district courts have held "that action is in effect converted into one brought under the federal Declaratory Judgment Act." *See, e.g.*, *Redwood Resort Props., LLC v. Holmes Co.*, No. 3:06-cv-1022-D, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007). This case, however, was originally filed in federal court. As such, the Court declines to convert Plaintiffs' request for declaratory relief under the Texas Declaratory Judgment Act into a request for declaratory relief under the federal Declaratory Judgment Act, 28 U.S.C. § 2201. Accordingly, the Court will grant Defendants' motion to dismiss Plaintiffs' request for declaratory judgment under the Texas Declaratory Judgment Act.

## IV.     LEAVE TO AMEND

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002);

*see also Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000) (holding that a court may dismiss a claim for failing to comply with Rule 9(b), but "it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead particularity after being afforded repeated opportunities to do so"); *Hitt v. City of Pasadena*, 561 F.2d 606, 608-09 (5th Cir. 1977) (holding that a complaint should be dismissed under Rule 12(b)(6) only "after affording every opportunity for the plaintiff to state a claim upon which relief can be granted").

In this case, Plaintiffs have requested leave to amend in the event the Court finds any of their pleadings deficient. Plaintiffs have had an opportunity to amend their pleadings twice in response to Defendants' initial motion to dismiss, which the Court denied as moot following Höeber Media's intervention and Plaintiffs' filing of its Second Amended Complaint. As such, with respect to those claims the Court has dismissed, the Court denies Plaintiffs request for leave to amend as Plaintiffs have had sufficient opportunity to amend the pleadings to state a claim and further amendment would be futile and only serve to delay the resolution of this matter.

## V.  CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** Höeber Media, LLC's and Thomas Hoeber's Motion to Dismiss Second Amended Complaint (ECF No. 21). Specifically, the motion is **GRANTED** with respect to Plaintiffs' claim for misappropriation of trade secrets under the DTSA, which claim is **DISMISSED with prejudice**, and **GRANTED** with respect to Plaintiffs' request for declaratory judgment under the Texas Declaratory Judgment Act, which claim is **DISMISSED without prejudice**. The Court **DENIES** the motion to dismiss in all other respects and **DENIES** Plaintiffs' request for leave to amend the Second Amended Complaint as to those claims the Court has dismissed. Accordingly, Plaintiffs' remaining claims are their request for a declaration as to the invalidity of Höeber Media's copyright registrations

and for a declaration that Hoeber was not an author or owner of any work or a proper registrant of any of JFS's materials, and Plaintiffs' DTPA claim.[4]

      **SO ORDERED** on this **16th day** of **December, 2020**.

                                                      Reed O'Connor

                                       **UNITED STATES DISTRICT JUDGE**

---

[4] In Plaintiffs' Second Amended Complaint, Plaintiffs allege the Court has subject-matter jurisdiction under 17 U.S.C. §§ 101 et seq. (the Copyright Act), 28 U.S.C. § 1331 (actions arising under U.S. law), and § 1338(a) (actions arising under the act of Congress relating to copyrights). Pls.' Sec. Am. Compl. ¶ 6. Plaintiffs allege the Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a). *Id.* ¶ 7. Defendants do not dispute the Court's subject matter jurisdiction. Further, it is undisputed that the parties are not diverse and, therefore, Title 28 U.S.C. § 1332(a) is not a basis for federal subject matter jurisdiction.

      A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject-matter jurisdiction over a case. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."). A civil action to obtain a remedy expressly granted by the Copyright Act or to construe the Copyright Act arises under federal copyright law. *See Goodman v. Lee*, 815 F.2d 1030, 1031 (5th Cir. 1987); *see also Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 732 (1989) (explaining that a dispute over work-for-hire ownership requires a court to construe the Copyright Act). Although Plaintiffs have abandoned their copyright infringement claim in the Second Amended Complaint, they seek a declaration as to the invalidity of Höeber Media's copyright registration and a declaration that Hoeber was not an author or owner of any work or a proper registrant of any of JFS's materials. Pls.' Sec. Am. Compl. ¶ 59. Viewing all well-pleaded facts as true and drawing all reasonable inferences in Plaintiffs' favor, as the Court must at the motion-to-dismiss stage, the Court concludes at this juncture that it has subject-matter jurisdiction under 17 U.S.C. § 1338(a) and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a). Consistent with its duty, set forth above, the Court will continue to monitor this jurisdictional assessment as the case progresses, particularly in view of Plaintiffs' allegations which have a singular (and somewhat uncommon) nexus to cases arising under the Copyright Act.