## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS - FORT WORTH DIVISION

| | | |
|---|---|---|
| **JOSEPH FRIEDHEIM,** | § | |
| **IASMIN FRIEDHEIM, and** | § | |
| **JF SOLUTIONS LTD.,** | § | |
| *Plaintiffs/Counter-Defendants* | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:20-cv-335** |
| | § | |
| **THOMAS HOEBER, and** | § | |
| *Defendant/Counter-Plaintiffs* | § | |
| **HÖEBER MEDIA, LLC,** | § | |
| *Defendant/Intervenor* | § | |

### PLAINTIFFS' RESPONSE TO
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**COME NOW** Plaintiffs Joseph Friedheim, Iasmin Friedheim, and JF Solutions Ltd. ("JFS") to file this their Response in reply to Defendants' Motion for Summary Judgment ("Motion").

**SUMMARY:** Genuine disputes of fact exist that preclude summary judgment. The facts added show that Defendants' copyrights are invalid due to an assignment to JFS from Kini Cassamo, who registered them in Portugal in 2016. Plaintiffs also provide evidence of Hoeber's fraudulent misrepresentations. Defendants Motion for Summary Judgment should be denied.

Plaintiffs incorporate by reference their *Third Amended Complaint* (ECF Doc 40-1) which includes relevant evidence in testimonial declarations.

**CONTENTS**

I.   FACTS .................................................................................................4

II.   LEGAL STANDARD .......................................................................8

III.   ARGUMENTS AND AUTHORITIES ..........................................8

   A. Defendants Summary Judgment cannot survive Plaintiff's evidence; Defendants are not entitled to judgment as a matter of law. ................................9

   B. Plaintiffs have evidence that Hoeber acted fraudulently and violated the Deceptive Trade Practices Act Under Texas Law. .............................................15

   C. Defendants have failed to show any deliberate misrepresentation to the Copyright Office and thus should deny any summary judgment supporting the invalidation of copyright registration VA 2-182-743. ........................................19

   D. The Court should deny attorneys' fees for the dismissed copyright claim due to Defendants' unclean hands and the details of this case. ................................20

   E. Plaintiffs have abandoned the Copyright Claim and damages ......................21

IV.   CONCLUSION ............................................................................22

**Cases**

*Amstadt v. U.S. Brass Corp*., 919 S.W.2d 644, 649 (Tex. 1996) .................... 17, 19

*Assessment Techs. of WI, LLC v. Wire Data, Inc.*,

    361 F.3d 434, 436 (7th Cir. 2004) ................................................................21

*Dias-Angarita v. Countrywide Home Loans Inc.*, ...........................No. H-13-2638,

    2013 U.S. Dist. LEXIS 147091 (S.D. Tex. Oct. 11, 2013) ..........................16

*Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881 (2019)....20

*In re First Merit* Bank, N.A.,

    52 S.W.3d 749, 758 (Tex. 2001) (orig. proceeding) ............................. 14, 15.

*Interplan Architects, Inc. v. C.L. Thomas, Inc.,* No. 4:08-cv-03181,

    2010 U.S. Dist. LEXIS 114306 at *24 (S.D. Tex. Oct. 27, 2010) ...............12

*M3Girl Designs, LLC v. Blue Brownies*, LLC,

    2012 U.S. Dist. LEXIS 193615, *5 (N.D. Tex, 2013) ........................... 20, 21

*Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003) ............8

*Southwest E & T Suppliers, Inc. v. American Enka Corp*.,

    463 F.2d 1165, 1166 (5th Cir.1972). ...........................................................10

*Weitzel v. Barnes*, 691 S.W.2d 598, 1985 Tex. LEXIS 863 (Tex. 1985)...............18

**Statutes**

17 U.S.C. § 411 ........................................................................................................20

17 U.S.C. § 504........................................................................................................22

17 U.S.C. § 505........................................................................................................20

Tex. Bus. & Com. Code § 17.45(b) ................................................................ 17, 18

## I.  FACTS

1.    Plaintiffs filed their *Third Amended Complaint* on May 27th, 2021.[1] Plaintiffs allege Hoeber falsely claimed to act in the name of JFS to obtain material that was not his to take, and but for his misrepresentations he would not have the material, as neither Nuno Tuna nor the Copyright Office would have given him the artwork itself and the copyright. Plaintiffs' *Third Amended Complaint* included declarations from Joseph Friedheim and Kini Cassamo, and other materials to prove Hoeber's deliberate misrepresentations.

2.    Defendants filed their Motion for Summary Judgment on May 31, 2021, seeking to end Plaintiffs' Invalid Copyright Registration Claims, Plaintiff's Fraud and Deceptive Trade Practices Act Claims, and seek to invalidate Plaintiffs' copyright registration, recover attorneys' fees, and seek summary judgment on Plaintiffs' claims for damages.

3.    Defendants claim Plaintiffs have no evidence that could lead to a duty to disclose, no evidence of any statement to Plaintiffs exists sufficient to support a fraud claim, and Plaintiffs cannot overcome the legal presumption of validity. Defendants refer to Nuno Tuna as an individual refusing to cooperate with Plaintiffs.[2]

---

[1] To the extent that facts vary here from the current complaint, they remain viable to interfere with the Motion, as the claims in the version attached to the most recent motion for leave includes no new claims, but clears up the narrative. See ECF Doc. 40-1.

[2] ECF Doc 42 page 10, p. 10.

4.      Plaintiffs herein present evidence by sworn declaration from Marina Duarte Brás, Luis Afonso Fidalgo, and Nuno Manuel Valente Rodrigues Maldonado Tuna, discussing their encounters with JFS and Hoeber filed as Exhibits 1-3.

<u>Marina Duarte Brás</u>

5.      Marina Duarte Brás, C.E.O. of Frutóbidos Unipessoal, Lda. ("Frutóbidos"), a company incorporated and existing under the laws of Portugal, declares JFS's role as executive importer for their "Ginja D'Obidos – Vila das Rainhas." She declares that JFS is the sole authorized entity to use and trade upon their goods and their trademark "Vila das Rainhas" in the United States.

6.      Frutóbidos authorized JFS to restyle the "Vila das Rainhas" label for the American market, suggested by Kini Cassamo as agent for JFS. Brás learned Kini Cassamo registered the label prototypes he performed as agent of JFS in 2016 in his own name with the copyright registry in Lisbon, Portugal, the General Inspection of Cultural Activities ("IGAC") identified as registration no. 1971/2016 with description: PROJECTOS CRIATIVOS DE KINI CASSAMO. Brás also learned that the copyrights were fully transmitted to JFS. In her declaration, Brás also discusses her encounter with Hoeber and his unsuccessful attempt to convince her to change the labels of "Vila das Rainhas". *Declaration of Marina Duerte Brás*, Exhibit 1.

Luis Afonso Fidalgo

7.      Luis Afonso Fidalgo, C.E.O. of On Flavours, Lda. ("On Favlours"), a company incorporated and existing under the laws of Portugal, provided a declaration discussing his interaction with JFS and Thomas Hoeber, regarding a possible collaboration involved gin from On Favlours and Ginja D'Obidos – Vila das Rainhas, already imported by JFS. Luis relates his interaction with Thomas Hoeber, during which Hoeber told Luis's business partner that Hoeber was taking over JFS because Joseph Friedheim was in critical health conditions. Alarmed by the news, Luis states that he consulted with Marina Brás to confirm the information and found that it was false, and states, "It became very clear that Mr. Hoeber was attempting to profit from a misrepresentation and acting fraudulently."[3] Luis ceased communication with Hoeber afterwards. *Declaration of Luis Afonso Fidalgo,* Exhibit 2.

Nuno Manuel Valente Rodrigues Maldonado Tuna

8.      Nuno Manuel Valente Rodrigues Maldonado Tuna ("Nuno Tuna") has also provided his declaration, telling the story of his relationship with JFS, starting in 2015, when he was contracted to perform graphic technical work for JFS under the instruction and supervision of JFS agent Kini Cassamo.

---

[3] Exhibit 2, paragraph 4.

9.     Nuno Tuna declares the work he performed was solely for the use of JFS.[4] Nuno Tuna described his tasks as technical graphic execution of front and back labels, label placement, bottle neck seal coat, bottle simulations, bottle specifications, and bottle packaging; and technical graphic execution of company logo, business cards, stationery, material, presentations and proposals, printable material, and their applications. Nuno Tuna declares that he was approached by Hoeber in June 2019, whom he believed to be a fellow agent of JFS. *See Statement of Nuno Manuel Valente Rodrigues Maldonado Tuna,* Exhibit 3.

10.    Nuno Tuna declares that Hoeber told Nuno Tuna that the Friedheims were retiring and wished Hoeber to take over JFS. Hoeber asked Nuno Tuna to sign documentation transferring all rights Nuno Tuna possessed regarding the copyrights of the work he performed for JFS. Nuno Tuna declared he believed he owned no copyright entitlement, nor authorship to any of the work he presented to Kini Cassamo for the JFS designs.

11.    Nuno Tuna was led to believe by Hoeber that he was assisting JFS by eliminating ambiguity regarding the copyright ownership by signing the documentation given to him by Hoeber, based on Hoeber's representations to him that he was acting as an agent for JFS and did not realize that Hoeber had parted ways with the Friedheims and did not represent them or JFS.

---

[4] Exhibit 3, paragraph 2.

12.     Nuno Tuna lastly declares he has no financial claim against JFS or the Friedheims.

13.     Clarifying, Nuno Tuna, an agent of JFS, declared that Hoeber misrepresented his relationship to JFS. Hoeber was at one time an agent of JFS, so Nuno Tuna reasonably believed the misrepresentation and acted on those misrepresentations when he assigned the copyrights to Hoeber. *See Statement of Nuno Manuel Valente Rodrigues Maldonado Tuna,* Exhibit 3.

## II. LEGAL STANDARD

27.     In adjudicating a motion for summary judgment, a trial court should take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003).

## III.   ARGUMENTS AND AUTHORITIES

15.     The declarations of Marina Duarte Brás, Luis Afonso Fidalgo, and Nuno Manuel Valente Rodrigues Maldonado Tuna describe in detail Hoeber's misrepresentations and fraud and show genuine disputes of material fact that must be heard before a jury at trial.

16.    Because the Court must view all evidence in favor of the nonmovant, Defendant cannot succeed as a matter of law on any of his claims against Plaintiffs, the Court must deny Defendants Motion for Summary Judgment.

### A. Defendants Summary Judgment cannot survive Plaintiff's evidence; Defendants are not entitled to judgment as a matter of law.

  i.    Plaintiffs have evidence that Hoeber made material misrepresentations to Nuno Tuna and the disputed copyright material belongs to JFS.

17.    Defendants claim Plaintiffs need to establish that Hoeber had a duty to disclose from a fiduciary or confidential relationship. Defendants go as far as to say that "Hoeber Media was entirely free to purchase the copyright from Tuna even if Hoeber believed that Tuna was only selling it to Hoeber Media because Tuna thought Hoeber was working for JFS."[5] If this is the case, then by Defendants' reasoning any individual can claim to act as an agent of anyone and get away with the transaction as long as they claim it to do it under someone else's name. The individuals who have had their good name misrepresented would then have no recourse for anyone doing business under their name!

18.    The statements made by Marina Duarte Brás, Luis Afonso Fidalgo, and Nuno Manuel Valente Rodrigues Maldonado Tuna show Hoeber's material misrepresentations, giving forth additional evidence of a question of material fact as to the authenticity of the disputed copyright material. *See* Exhibits 1, 2, & 3.

---

[5] ECF Doc 42, page 13.

19.     Defendants cite *Southwest E & T Suppliers, Inc. v. American Enka Corp,*
*Bradford v. Vento, Hoffman v. AmericaHomeKey, Inc.*, to distract anyone from
Hoeber's actual statements to Nuno Tuna. Plaintiffs agree that mere silence does
not amount to fraud in the absence of a duty to disclose. *Southwest E & T*
*Suppliers, Inc. v. American Enka Corp*., 463 F.2d 1165, 1166 (5th Cir.1972).
Defendants cite these cases to force attention on the "duty to disclose" aspect of
the law, while Plaintiffs can show herein that Defendant was not silent at all.

20.     According to Nuno Tuna, Defendant made actual statements and
misrepresented himself as an agent of JFS to Nuno Tuna, an actual agent of JFS, a
deliberate misstatement which led him to sign away Nuno Tuna's non-existent
rights to Hoeber under the impression it was for JFS. Hoeber subsequently used
such signings for his wrongly registered Copyright Office mark listing Nuno Tuna
as author. *See* Doc 44, App.000429-000438.

21.     Defendants cannot mislead Nuno Tuna, an agent of JFS, to steal the
copyright that belongs to JFS, and then mislead the Copyright Office and lay claim
to materials in which Hoeber had no rights.

22.     The sworn statements by Marina Duarte Brás, Luis Afonso Fidalgo, and
Nuno Manuel Valente Rodrigues Maldonado Tuna support the question of material
facts about the validity of Defendants' Copyright Office registration.

23.     Every step of the way, all of the disputed copyright material was created by individuals working for JFS. According to Nuno Tuna, Nuno Tuna believed he was transferring his alleged copyright entitlement and alleged authorship to JFS and not Hoeber personally. Nuno Tuna did not even believe he had any authorship or copyright rights but acted as requested and assigned according to Defendant's misrepresentations. Exhibit 3, paragraph 3.

24.     Further, Nuno Tuna, the alleged author according to Hoeber, explicitly states in his sworn declaration that he did not believe he was the author of the disputed work or entitled to any of the disputed work. He always believed that JFS is the rightful author of the disputed work, and he simply was doing the disputed work for JFS under their supervision. Nuno Tuna explains Hoeber's misrepresentations regarding the authorship of the disputed copyright material to the Copyright Office. *See* Exhibit 3, paragraph 3.

25.     Plaintiffs here have shown fraudulent statements made by Hoeber to Nuno Tuna, misrepresentations as to Hoeber's agency and Nuno Tuna's ownership originally. The application for copyright registration filed by Hoeber was willfully inaccurate, and the Copyright Office relied on those misrepresentations in awarding Hoeber the disputed copyright material. *See Interplan Architects, Inc. v. C.L. Thomas, Inc.,* No. 4:08-cv-03181, 2010 U.S. Dist. LEXIS 114306 at *24 (S.D. Tex. Oct. 27, 2010); *see* 17 U.S.C. § 411; *see also* ECF Doc. 42, page 13.

26.    Nuno Tuna, acting as an agent of JFS, was present during the transaction and has provided statements to substantiate the existence of Hoeber's false misrepresentations. Further, the declarations by Marina Duarte Brás, Luis Afonso Fidalgo corroborate Hoeber's fraudulent statements. The statements described show Hoeber's character and that he willfully and deliberately presented inaccuracies to the Copyright Office, and that the Copyright Office relied on those inaccuracies. Defendants defrauded Plaintiffs, Nuno Tuna, Marina Duarte Brás, Luis Afonso Fidalgo, the Copyright Office (Library of Congress), and this Court by laying claim to the fraudulently obtained copyright material. The disputed copyright material belongs to JFS. *See* Exhibit 1, 2, & 3.

27.    Lastly, Hoeber cannot seriously challenge Kini Cassamo's copyright registration of the subject materials dated May 19, 2016, with the Portuguese Ministry of Culture.[6] As provided in Plaintiff's Third Amended Complaint, it shows the copyrighted materials authorship belonged to Kini Cassamo long before this dispute erupted, and these materials have been assigned to JFS.[7]

28.    The combination of evidence by Kini Cassamo, Nuno Tuna, Marina Duarte Brás, Luis Afonso Fidalgo create a question of material fact about the validity of Defendants' registration. *See* Exhibit 1, 2, & 3; ECF Doc. 40-1, pg. 108-115.

---

[6] ECF Doc. 40-1, pg. 110.
[7] ECF Doc. 40-1, pg. 108-115.

ii.Plaintiffs have given this Court evidence that Hoeber acted fraudulently.

29.     Hoeber's fraudulent misrepresentations have been verified with evidence provided by Kini Cassamo, Nuno Tuna, Marina Duarte Brás, Luis Afonso Fidalgo. See Exhibit 1, 2, & 3; ECF Doc. 40-1, pg. 108-115. These detailed declarations show Hoeber's consistent interactions to abuse the Friedheims and lie to get ahead.

30.     Nuno Tuna, who never had authority to assign the subject materials, acted on Hoeber's fraudulent misrepresentations and is the basis for this suit.

31.     To bring a claim for common law fraud, a plaintiff must show the following: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re First Merit Bank*, N.A., 52 S.W.3d 749, 758 (Tex. 2001) (orig. proceeding).

32.     According to Nuno Tuna, Hoeber lied to Nuno Tuna that the Friedhiems were retiring and wished Hoeber to take over JFS. Hoeber asked Nuno Tuna to sign documentation transferring all rights Nuno Tuna possessed regarding the copyrights of the work he performed for JFS. Nuno Tuna did not have any authorship rights and believed the Friedheims wanted to retire, where Hoeber knew

it was false, and as agent of JFS signed the rights to Hoeber in reliance of Hoeber's false statements. These false statements have caused Plaintiff's injury in having to retain and attorney to engage in this dispute for the rights of their work. *See* Exhibit 1, 2, & 3; ECF Doc. 40-1, pg. 108-115.

33.     Hoeber's misrepresentations have caused Plaintiff's humiliation in business dealings with other parties. Because of these fraudulent misrepresentations Plaintiffs have had to spend countless hours sorting through the misrepresentations in order to uncover the truth of the matter through this Court. JFS has had to explain why a previous agent of JFS has gone rogue to business partners, and why materials owned by Frutobidas are now part of a copyright registration owned by this rogue third party.

34.     The statements of Kini Cassamo, Nuno Tuna, Marina Duarte Brás, Luis Afonso Fidalgo show the fraud of Hoeber. *See In re First Merit Bank*, N.A., 52 S.W.3d at 758;  Exhibit 1, 2, & 3; ECF Doc. 40-1, pg. 108-115.

iii. Plaintiffs are the authors of the copyrighted material.

35.     The evidence in the sworn statements of Kini Cassamo, Nuno Tuna, Marina Duarte Brás, Luis Afonso Fidalgo establish a genuine dispute that is not appropriate for summary judgment. Exhibit 1, 2, & 3; ECF Doc. 40-1, pg. 108-115.

36.     Nuno Tuna states that he was not the owner of the copyright and was never the legitimate author of the subject works. The works themselves have a disclaimer

on them stating that the copyright is owned by JFS. *See* ECF Doc 40-1, p. 59 & 70. Nuno Tuna has stated that he was a graphic technical designer working under the supervision and guidance of Kini Cassamo and JFS, further invalidating the legitimacy of Hoeber's copyright in the Copyright Office of the Library of Congress. Hoeber cannot solely claim Nuno Tuna is the author, or himself the owner. There is overwhelming evidence that Plaintiffs are entitled to the copyright material according to the true author Kini Cassamo and statements by other involved individuals. *See* Exhibit 1, 2, & 3; ECF Doc. 40-1, pg. 108-115.

### B. Plaintiffs have evidence that Hoeber acted fraudulently and violated the Deceptive Trade Practices Act Under Texas Law.

37.     There is evidence that an agent of JFS, Nuno Tuna, was fraudulently misled by Hoeber in order to fraudulently obtain a copyright in the USPTO on the disputed material rightfully belonging to JF Solutions.[8]

Hoeber's misrepresentations suffice to meet the elements of a DTPA claim.

38.     Defendants attack standing for Plaintiffs, arguing that Hoeber's misrepresentations were not to Plaintiffs, citing *Dias-Angarita v. Countrywide Home Loans Inc.* No. H-13-2638, 2013 U.S. Dist. LEXIS 147091 at *3 (S.D. Tex. Oct. 11, 2013).

---

[8] *See* Exhibit 3.

39.     Defendants fail to recognize that Hoeber's misrepresentations were to an agent of JFS, and even his request to Nuno was couched in terms of "Since you're an agent of JFS and I'm an agent of JFS, please sign this paperwork."

40.     The testimony of Kini Cassamo regarding Nuno Tuna's role as agent of JFS and Nuno Tuna's testimony regarding his own role in JFS show that Hoeber acted fraudulently toward JFS and cannot claim ownership of the copyrighted material. Because Nuno Tuna acted as agent of JFS while Hoeber fraudulently made misrepresentations to him, JFS has standing for the harm resulting on the reliance's made in the fraudulent misrepresentations. *See* Exhibit 1, 2, & 3; ECF Doc. 40-1, pg. 108-115. Defendant's summary judgment should be denied.

41.     However, even if the Court found that no agency existed, privity of contract with a defendant is not required for the plaintiff to be a consumer under DTPA. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996).

Plaintiffs are "consumers" under the DTPA.

42.     As all parties agree, a "consumer" as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." *Id*. However, Defendants' definition of services is too restricted, as the DTPA defines qualifying commerce as "the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, and shall include

any trade or commerce directly or indirectly affecting the people of this state." Tex. Bus. & Com. Code § 17.45(d).

43.    The Texas DPTA makes actionable "false, misleading, or deceptive acts or practices" that includes . . . (2) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services; . . . (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not. Tex. Bus. & Com. Code § 17.45(b).

44.    Lastly, the DTPA defines "Business consumer" to include "an individual, partnership, or corporation who seeks or acquires by purchase or lease, any goods or services for commercial or business use. The term does not include this state or a subdivision or agency of this state." Tex. Bus. & Com. Code § 17.45(b)(10).

45.    Plaintiffs are undeniably business consumers who sought to acquire services in the form of commercial artistic works from Nuno Tuna. Thomas Hoeber interfered in that process and by way of deceptive statements gained a false ownership interest and causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods.

46.    To the extent that this exact scenario does not clearly support or prevent this Court from concluding a finding that Plaintiffs are business consumers, the Court

should follow the Texas Supreme Court's position that the "DTPA shall be liberally construed to protect consumers from deceptive business practices." *Weitzel v. Barnes*, 691 S.W.2d 598, 1985 Tex. LEXIS 863 (Tex. 1985).

47.    JFS's relationship to the transaction cannot be understated. Hoeber would never have been in this position without JFS support. Hoeber learned the business through JFS and JFS connections, Hoeber met Nuno Tuna through JFS, and the transaction itself regarded an agent of JFS and copyright materials rightfully belonging to JFS. Nuno Tuna explained his role in the transaction that was never his to make in Exhibit 3, fully showing Hoeber's deceptions and JFS's related involvement. Hoeber made a transaction with an agent of JFS, JFS qualifies as a consumer for the purposes of DTPA. *See* Exhibit 3.

48.    JFS is a consumer for the purposes of the DTPA, defendant can be sued under the DTPA, the defendant under Section 17.46(a) fraudulently misrepresented himself to trick Nuno Tuna into signing his documents, and the defendant's actions have produced plaintiff's damages by fraudulently obtaining copyright material and fraudulent copyright registration. *Amstadt v. U.S. Brass Corp*., 919 S.W.2d 644, 649 (Tex. 1996). Defendant's Summary Judgment should be denied. *See* Exhibit 1, 2, & 3; ECF Doc. 40-1, pg. 108-115.

**C. Defendants have failed to show any deliberate misrepresentation to the Copyright Office and thus should deny any summary judgment supporting the invalidation of copyright registration VA 2-182-743.**

49.    Defendants must now address the new material facts and evidence provided to this Court which have altered the case.

50.    Defendants have certainly provided a narrative of changing facts to the Court in their Motion, but at no point have Defendants provided any evidence of any deliberate statement.

51.    Even if the changing facts and narrative as outlined by Defendants were true, neither this Court nor Defendants can infer deception when mere lack of understanding can suffice.

52.    Inexplicably, Defendants assert that Plaintiffs "could not have filed this action had they not had a federal copyright registration," citing *Fourth Estate Pub. Ben. Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887 (2019). There is nothing in *Wall-street.com* that teaches a plaintiff must already have a copyright registration with the Copyright Office in order to commence a suit to attack the validity of a separate copyright registration. This case relies significantly on 17 U.S.C. § 411 and does not require a separate federal copyright registration in order to challenge the validity of another federal copyright registration.

53.    Thus, this case remains viable irrespective of the accuracy of the registration facts asserted in VA 2-182-743.

**D. The Court should deny attorneys' fees for the dismissed copyright claim due to Defendants' unclean hands and the details of this case.**

54.     Recovery of attorneys' fees is not automatic. *M3Girl Designs, LLC v. Blue Brownies*, LLC, 2012 U.S. Dist. LEXIS 193615, *5 Rather, the overall inquiry into whether an award of attorneys' fees would be appropriate under 17 U.S.C. § 505 lies squarely within the discretion of the Court. *Id.*.  This inquiry is generally made "in the light of the litigation as a whole." *Id.* Section 505 of the Copyright Act does not set forth a standard for awarding attorneys' fees to a prevailing party; it merely authorizes such awards. The courts have not said, however, that the symmetry of plaintiff and defendant in copyright cases requires a presumption that the prevailing party is entitled to an award of attorneys' fees. *Assessment Techs. of WI, LLC v. Wire Data, Inc.*, 361 F.3d 434, 436 (7th Cir., 2004).

55.     In determining whether an award of fees is appropriate, a court's discretion is guided by a non-exhaustive list of factors identified in case law, including: frivolousness, motivation, objective unreasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence. *M3Girl,* 2012 U.S. Dist. LEXIS 193615, *5.

56.     Plaintiffs filed their First Amended Complaint to drop the copyright infringement claim, add Hoeber Media, LLC, and correct a typo regarding the chapter of Texas Civil Practice and Remedies Code. While there was a motion to dismiss, Plaintiff did not drop the case because it was not viable, but because

Defendant's use of the copyright was found to be not actually commercial. As the discovery revealed, Defendant has used the registration thus far merely to attempt extortion from Plaintiffs. By his deception, Thomas Hoeber attempts to laugh at his previous mentor and friends and say, "Hah, I connived you out of your copyright, interfered in your efforts – so pay me for my successful lies."

57.   An award of fees in this case would be rewarding unclean hands. In the present case, there is no ambiguity regarding the legitimacy of authorship, and infringement today, even if there has been a slow unfolding of the facts. *See* Exhibit 1, 2, & 3; ECF Doc. 40-1, pg. 108-115. The only question is one of damages. Defendants assert that Plaintiffs' dismissal of the copyright claim automatically warrants fees, as though the claim was frivolous or that Plaintiffs' claim had no merits.

58.   This case differs from the case cited by Defendants, *M3Girl*, which did not involve purposeful fraudulent misrepresentations.

### E. Plaintiffs have abandoned the Copyright Claim and damages.

59.   Defendants have identified that Plaintiffs still include a claim for damages under 17 U.S.C. § 504 in Plaintiffs' Complaint, as even most recently amended.

60.   Plaintiffs admit that the reference is an artifact from their Original Complaint; to the extent that the issue remains vague – Plaintiffs explicitly disclaim damages under for copyright infringement under § 504.

## IV.   CONCLUSION

Plaintiffs assert that summary judgment is inappropriate in this case as described above. Defendants' have failed to show any evidence of subterfuge or deliberate statement constituting fraud to the Copyright Office, relying only on inconsistent statements which are reasonable in a case with unsophisticated individuals working across two continents. Statements made to the Copyright Office made under penalty of perjury do not equate to statements made with ironclad guarantees that new facts may rise.

Plaintiffs have shown that they are business consumers who have in the events described sought to obtain commercial marketing materials, and Defendants have used deception interfered in that process, thereby gaining fraudulent results that have damaged Plaintiffs' business prospects and clouded the ownership of Plaintiffs' commercial works. These events are actionable under the Texas DTPA.

Plaintiffs ask that this Court deny the Motion for Summary Judgment.

Respectfully submitted,

By: /s/Warren V. Norred
Warren Norred, TX Bar 24045094, wnorred@norredlaw.com
Norred Law, PLLC; 515 E. Border, Arlington, TX 76010
817-704-3984 O; 817-524-6686 F
Attorney for Plaintiffs

**Attachments:**
Exhibit 1 – Declaration of Marina Duarte Brás,
Exhibit 2 – Declaration of Luis Afonso Fidalgo
Exhibit 3 – Declaration of Nuno Tuna

CERTIFICATE OF SERVICE - I certify that the above Response to Defendants'
Motion for Summary Judgment was served on all parties seeking service in the
instant case via the Court's e-file system on June 21, 2021.

/s/Warren V. Norred