IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| JOSEPH FRIEDHEIM, IASMIN FRIEDHEIM, and JF SOLUTIONS LTD. *Plaintiffs/Intervention Defendants,* v. THOMAS HOEBER *Defendant,* HÖEBER MEDIA, LLC *Intervenor Plaintiff/Counter-Defendant* | § § § § § § § § § § § | Civil Action No. 4:20-cv-335 |

DEFENDANTS' REPLY BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

PAGE

I. SUMMARY OF THE ARGUMENT ........................................................................................1

II. ARGUMENT AND AUTHORITIES ........................................................................................2

    A. The Plaintiffs' sham affidavits and parol evidence are not admissible. ......................2

        1. Kini Cassamo .................................................................................................3

        2. Marina Duarte Brás .......................................................................................7

        3. Luis Afonso Fidalgo .......................................................................................8

        4. Nuno Tuna......................................................................................................8

    B. Plaintiffs cannot make out a claim under the DTPA. ...............................................10

    C. Plaintiffs' misstatements to the Copyright Office were deliberate. ..........................11

    D. There is no evidence to support Plaintiffs' defense of Unclean Hands and this affirmative defense was not plead. ............................................................................12

III. CONCLUSION.....................................................................................................................13

TABLE OF AUTHORITIES

PAGE(S)

*Cases*

*Cleveland v. Policy Mgmt. Sys. Corp.*,
    526 U.S. 795 (1999)............................................................................................2, 5, 8

*Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*,
    220 F.3d 380 (5th Cir. 2000) ..............................................................................................2

*Duplantis v. Shell Offshore, Inc.*,
    948 F.2d 187 (5th Cir. 1991) ..............................................................................................2

*In re Barkats*,
    No. 14-00053, 2014 Bankr. LEXIS 2882 (Bankr. D.D.C. July 2, 2014).............................4

*Love v. Circle K Corp.*,
    No. SA-85-CA-2169, 1986 U.S. Dist. LEXIS 21682 (W.D. Tex. Aug. 11, 1986) ...........12

*Nissho-Iwai Am. Corp. v. Kline*,
    845 F.2d 1300 (5th Cir. 1988) ...........................................................................................3

*Sivertson v. Citibank, N.A.*,
    No. 4:18-CV-169-ALM-CAN, 2019 U.S. Dist. LEXIS 104506
    (E.D. Tex. Apr. 19, 2019) ..................................................................................................9

*Software Publrs. Ass'n v. Scott & Scott, Ltd. Liab. P'ship*,
    No. 3:06-CV-0949-G ECF, 2007 U.S. Dist. LEXIS 59814 (N.D. Tex. Aug. 15, 2007) ...12

*Triple S Props. v. St. Paul Surplus Lines Ins. Co.*,
    No. 3:08-CV-796-O, 2010 U.S. Dist. LEXIS 164683 (N.D. Tex. Apr. 20, 2010) ..............2

*Weiner v. Blue Cross & Blue Shield of La.*,
    No. 3:17-cv-949-BN, 2018 U.S. Dist. LEXIS 46200 (N.D. Tex. Mar. 21, 2018)...............2

*Rules*

Fed R. Civ. Pro. 56..............................................................................................................8

Fed R. Evid. 902 .................................................................................................................4

*Other Authorities*

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT
    OFFICE PRACTICES § 309.2 (3d ed.2021) ........................................................................11

## I.   SUMMARY OF THE ARGUMENT

Plaintiffs have left a chain of unpaid graphics designers in their wake and hold no respect for value of the creative labor of these artists. Plaintiffs initially claimed, under oath, that Nuno Tuna was the creator of the illustration at issue but that there was a work for hire agreement. They also claimed that he had assigned them the artwork in writing. But when Plaintiffs could not produce such an agreement or assignment, they started to claim that Tuna was not the author.

When confronted with the reality that their claims were impossible in light of the existing documentary evidence, Plaintiffs have repeatedly changed their story—all the time swearing that it was true. But Plaintiffs' latest version of the story is not supported by any admissible facts.

Plaintiffs argue that there are facts in dispute, but rely solely on declarations that contradict their previous sworn statements—otherwise known as sham affidavits. Moreover, these declarations consist almost entirely of hearsay, parol evidence, statements not made from personal knowledge, opinions, and legal conclusions. Moreover, several of these declarations are from persons who were never disclosed as persons with knowledge prior to the close of discovery.

Plaintiffs have not come forward with more than a scintilla of evidence to support the claims in the Second Amended Complaint and there are no material facts in dispute. Therefore, the Court should grant Defendants' Motion for Summary Judgment in all respects.

## II.  ARGUMENT AND AUTHORITIES

A.  **The Plaintiffs' sham affidavits and parol evidence are not admissible.**

In defense to the Motion for Summary Judgment, the Plaintiffs have relied on four sources of information. First, they incorporate their proposed Third Amended Complaint by reference and the declarations of Joseph Friedheim and Kini Cassamo that supported that document. Additionally, they have attached three new declarations to their response. Each of the declarations are discussed in detail below.

Under well established Fifth Circuit precedent, a party responding to a motion for summary judgment cannot manufacture a factual dispute by contradicting previous sworn testimony.[1] And as the Supreme Court has recognized "[courts] have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement."[2] It is the responding party's obligation to respond with admissible evidence and authenticated documents.[3] Moreover, it is not the duty of the court to examine "whether and how the non-moving party's evidence, such as an unauthenticated document, might be reduced to acceptable form by the time of trial."[4]

In this case, the Original, First, and Second Amended Complaint were each supported by a declaration of Joseph Friedheim, whereby he swore under penalty of perjury that the factual allegations contained in those pleadings were true and made with his personal knowledge.[5] However,

---

[1] *See Doe ex rel. Doe v. Dall. Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000).
[2] *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999).
[3] *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 191-192 (5th Cir. 1991) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 n.19 (1970).
[4] *Id.* at 192.
[5] Compl. at Ex. D [ECF Page 84], Incorporated by reference in ¶ 31, ECF No. 1; 1st Am. Compl. at [ECF Page 85] Incorporated by reference in ¶ 32, ECF No. 12; 2nd Am. Compl. at [ECF Page 89], Incorporated by reference in ¶ 44, ECF No. 18.

he did not submit a corresponding declaration along with the proposed Third Amended Complaint–rather, he merely submitted the same August 10, 2020 declaration from the Second Amended Complaint. Therefore, the allegations in the proposed Third Amended Complaint are merely unsupported allegations and not admissible as summary judgment evidence.[6]

Since the allegations in the proposed Third Amended Complaint are not competent summary judgment evidence, that leaves only the four remaining declarations. As detailed below, these documents are not admissible as summary judgment evidence either.

1.  **Kini Cassamo**

The purported declaration of Kini Cassamo, which was submitted with Plaintiffs' Motion for Leave to Amend the Complaint as Exhibit E (ECF No. 40-1 at 108) is not admissible because it was made outside of the United States, but does not contain the necessary language required by 28 U.S.C. § 1746(1) for declarations executed outside of the United States. In order to be admissible under that statute, the declaration must state that it is being made "under penalty of perjury *under the laws of the United States of America.*" This is no mere formality because Cassamo is outside the jurisdictional reach of this Court and there is no real penalty that can be imposed upon him without his consent.

Under Fifth Circuit precedent, it is well settled that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment.[7] The only exception to this rule is the statutory exception contained in 28 U.S.C. § 1746 that permits unsworn declarations to substitute for an

---

[6] *Triple S Props. v. St. Paul Surplus Lines Ins. Co.*, No. 3:08-CV-796-O, 2010 U.S. Dist. LEXIS 164683, at *9 (N.D. Tex. Apr. 20, 2010); *Weiner v. Blue Cross & Blue Shield of La.*, No. 3:17-cv-949-BN, 2018 U.S. Dist. LEXIS 46200, at *8 (N.D. Tex. Mar. 21, 2018).
[7] *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988).

affiant if the statement contains specific language required by the statute.[8] But, as discussed above, the Cassamo declaration fails to conform with this statutory exception because it was made outside of the US and does not state that is was made "under penalty of perjury under the laws of the United States of America." Therefore, this declaration cannot be used as evidence in response to the motion for summary judgment.[9]

Likewise, the documents he attaches to his declaration are also inadmissible because they are foreign public records. To be admissible under Fed. Rule of Evidence 902, they must be:

> accompanied by a final certification that certifies the genuineness of the signature and official position of the signer or attester — or of any foreign official whose certificate of genuineness relates to the signature or attestation or is in a chain of certificates of genuineness relating to the signature or attestation. The certification may be made by a secretary of a United States embassy or legation; by a consul general, vice consul, or consular agent of the United States; or by a diplomatic or consular official of the foreign country assigned or accredited to the United States.

There is only one exception to this rule. If the parties have been given a reasonable opportunity to investigate the document's authenticity, and for good cause, a court may allow them to be treated as presumptively authentic.[10] However, in this case, the Defendants have not yet had the opportunity to investigate the documents' authenticity. The document Plaintiffs are claiming as a "copyright" was not produced until March 4, 2021, did not include a translation, and was described as a "Portuguese Trademark Registration."[11] Cassamo's declaration and the translations were not produced until later. Cassamo was not available for a deposition and there was not enough time to attempt to get copies from the Portuguese government. Moreover, in spite of Plaintiffs'

---

[8] *Id.*

[9] In *re Barkats*, No. 14-00053, 2014 Bankr. LEXIS 2882, at *6 (Bankr. D.D.C. July 2, 2014) (affidavit made simply "under penalty of perjury," without reference to the laws of the United States of America does not satisfy the requirements of § 1746(1)).

[10] Fed R. Evid. 902.

[11] Reply Appendix at APP_446 - 450.

characterization of these documents as a "copyright," their own translation indicates that it is merely a receipt for some other undisclosed filing.[12] The Plaintiffs' own translation of this document states that it is a "Construction permit."[13] Nowhere in the document or the translation does it have the word "copyright." Thus, there is not good cause to treat them as presumptively authentic because the fact that Plaintiffs' own translation of these documents confirms that Cassamo paid 29.80 Euros for a construction permit is presumptively irrelevant. Since both the declaration and exhibits are inadmissible, these documents cannot be considered as summary judgment evidence.

Even if this declaration were admissible, it meets the definition of a "sham affidavit" because it contradicts the Plaintiffs' earlier sworn statements and there has been no explanation for this contradiction.[14] Plaintiffs have attempted to argue that Cassamo's declaration is merely filling in the gaps, but that story has a fatal flaw. In Plaintiffs' 30(b)(6) deposition, Joseph Friedheim tried to claim that he commissioned Cassamo to create the artwork in 2015 but when it was pointed out that he obviously would have known that at the time he filed the Complaints, but instead claimed it was Tuna who created the artwork, he had no real explanation:

> Q. So I'm curious about that because you just testified under oath that you commissioned both Kini and Tuna to create the artwork?
> **A. Yes.**
> Q. And then you said that it wasn't known that Cassamo participated in the creation of the artwork when the second amended complaint was filed in August – August 10th, 2020, and then new information has come to light?
> **A. Well –**
>     MR. NORRED: Objection, form.
> **A. Could I get clarification from my attorney?**
> Q. (BY MR. KLEMCHUK) No.
> **A. You guys have me over a barrel, don't you?**[15]

---

[12] Pls.' App. at 89, ECF No. 40-1 ("INVOICE/RECEIPT NO. 190243").
[13] *Id.* ("Construction permit. Type of document: Construction permit amount").
[14] *See Cleveland.*, 526 U.S. at 806.
[15] Defs.' App. 50-51, J. Friedheim, 30(b)(6) Dep. at 48:24–49:12 (The complete deposition transcripts were included in the Amended Appendix to the Motion for Summary Judgment, ECF No. 44).

The problem with this story is that it directly contradicts the earlier sworn statements and discovery responses that were served by Plaintiffs during the discovery period. In the original Complaint, Plaintiffs stated that it was a "Portuguese artist acquainted with the Friedheims created the label art, logo, and other marketing materials for JFS."[16] These allegations were verified by Joseph Friedheim in his declaration that was incorporated by reference and attached as an exhibit to the Complaint.[17] The "Portuguese artist" was later confirmed by Plaintiffs to be Nuno Tuna.[18] Again, in Plaintiffs' First Amended Complaint, which was also verified by declaration, Plaintiffs made the same claim.[19]

In the Second Amended Complaint, Plaintiffs alleged that "Tuna created the label art, logo, and other marketing materials for JFS in 2015" and that "Tuna has stated in writing that the copyrights belong to JFS, as the materials he produced included an explicit statement that the copyright of all materials belonged to JFS on the documents."[20] Again, this sworn allegation was supported by a declaration.[21] And in response to a Rule 34 Request for Admission asking Plaintiffs to admit that they did "not have a written assignment of copyright signed by Nuno Tuna," Plaintiffs gave this response:

> I, Joseph Friedheim, have a written acknowledgment by Tuna stating that the work was created as a work for hire and to the extent that it is not a work for hire, Tuna considers it owned by JFS.[22]

---

[16] Compl., ECF No. 1 at ¶10.
[17] Compl., ECF No. 1 at ¶ 31; Exhibit D at 84.
[18] Pls.' Resp. to Mot. to Dismiss, ECF No. 22 at 6, ¶ 10.
[19] First Am. Compl., ECF No. 12 at ¶ 11; Exhibit D at 85, incorporated in ¶ 32.
[20] Second Am. Compl. ECF No. 18 at ¶¶12-13.
[21] *Id.*, Ex. D at [ECF Page] 85, incorporated in ¶ 32.
[22] Reply App. at 453, Pls.' Resp. to RFA Nos. 1-2.

Of course, such a "written acknowledgment" was never produced because it never existed—this is why Plaintiffs are attempting to change their story.

Moreover, even the foundational statement in the second paragraph of Cassamo's declaration where he claims to have been "employed by Iasmin Friedheim" as a "Creative Director, Product Development Manager, Research Manager, Procurement and Market Strategy Manager" was directly contradicted by Iasmin Friedheim herself in her deposition where she unequivocally testified that she had never hired Cassamo in any capacity.[23]

### 2. Marina Duarte Brás

First, Brás was not disclosed as an individual likely to have discoverable information prior the close of discovery. Defendants did not have the opportunity to seek discovery related to her or even to ask questions about her in the depositions.

Second, most of her declaration is not from her personal knowledge. Her testimony about Cassamo is couched in terms of actions that happened such as "[t]here were several meetings," and other actions by Cassamo with no indication that she was involved at all.[24] Most of her relevant statements are really legal conclusions with no indication of how the underlying facts were within her personal knowledge. Her statement about the substance of Cassamo's alleged copyright does not come from her personal knowledge just because she claims it "recently came to her attention," or that she was "recently informed."[25]

Finally, the remainder of her statements are simply not relevant to the claims in the Second Amended Complaint.

---

[23] Defs.' App. 278, I. Friedheim Dep. at 98:5-7: "Q. . . at any time was your son an employee of JFS? **A. Never, no, sir**."
[24] Brás Decl. at ¶3, ECF No. 46-1.
[25] *Id.* at ¶4.

### 3. Luis Afonso Fidalgo

Fidalgo was also never disclosed as an individual likely to have discoverable information prior the close of discovery. Defendants did not have the opportunity to seek discovery related to him or even to ask questions about him in the depositions.

None of the otherwise pertinent statements in this declaration are admissible because everything of substance in this declaration comes, not from Fidalgo's personal knowledge, but rather is hearsay from his "business partner."[26] In fact, he states directly that "Hoeber informed my partner" of everything stated in his fourth paragraph. Not only is this hearsay within hearsay, but it is admittedly not made from personal knowledge and therefore not competent summary judgment evidence.[27]

### 4. Nuno Tuna

To the extent this declaration attempts to backtrack from Plaintiffs' sworn statements and discovery responses that established Tuna as the creator of the label artwork, it is squarely within the definition of a "sham affidavit."[28] As noted above, Plaintiffs have sworn up and down that Tuna was the artist who created the label artwork. But paragraph two of this declaration does not actually contradict this assertion. When read closely, Tuna never disclaims authorship or credits it to anyone else. And while Plaintiffs are attempting to concoct a story that Tuna merely provided technical assistance, the list of technical tasks in the second paragraph is not all-inclusive. Moreover, the fact that he performed some technical tasks does not exclude anything from the creative process. Rather,

---

[26] Fidalgo Decl. at ¶¶ 3-4, ECF No. 46-1.
[27] Fed R. Civ. Pro. 56: "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."
[28] *See Cleveland*, 526 U.S. at 806.

the language in this declaration is merely a smokescreen intended to bolster Plaintiffs' new theory without really committing to it.

In the third paragraph, Tuna merely attempts to convey hearsay about what was allegedly said to him by Hoeber. And the statement that he did not believe he had an authorship interest is irrelevant. Tuna's beliefs or understanding about the law of copyright authorship is irrelevant to the issue of legal authorship—*i.e.*, the person who fixes his artistic expression into a tangible form.

Moreover, this is parol evidence offered to contradict the language of the copyright assignment.[29] In the copyright assignment from Tuna to Hoeber Media, LLC, he represented that he was the sole author of the work identified in its Exhibit A.[30] Tuna also represented that he desired to assign his entire interest in that work to Hoeber Media—not JFS.[31] Therefore, to the extent this declaration is offered to contradict the assignment, it is not admissible because it is parol evidence.[32]

The first sentence of the final paragraph is irrelevant to any issues addressed by the motion for summary judgment and the last sentence is merely Tuna's opinion about a legal conclusion and also irrelevant.

Finally, Plaintiffs now claim, for the first time, that Nuno was an "agent of JFS."[33] But nothing in Tuna's declaration supports an agency relationship. But even if it did, it would be contrary to the sworn deposition testimony of JFS's 30(b)(6) deposition.[34] No agency relationship

---

[29] *See* Copyright Assignment, Def.'s Mot. to Dismiss 2nd Am Compl., Exhibit A, ECF No. 21-1.
[30] *Id.*
[31] *Id.*
[32] *See Sivertson v. Citibank, N.A.*, No. 4:18-CV-169-ALM-CAN, 2019 U.S. Dist. LEXIS 104506, at *17-18 (E.D. Tex. Apr. 19, 2019)("an unambiguous contract will be enforced as written, and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imparts.").
[33] Pls.' Resp. to Mot. Summ. J. at ¶ 13.
[34] Defs.' App. 73, J. Friedheim, 30(b)(6) Dep. at 73:5-12; *see also* 42:19-20; 45:18-25; 54:8-10; 64:1-4 "He was a tool. Does a backhoe dig a hole for you? No, it's a tool you use to dig a hole."

was ever alleged in the Second Amended Complaint, and Plaintiffs do not cite to any evidence to show that an agency relationship ever existed.

Therefore, the Tuna declaration is not admissible as summary judgment evidence because it contradicts Plaintiffs' prior sworn statements and is a mix of parol evidence and hearsay.

Since none of the declarations contain any relevant admissible evidence and Plaintiffs have not relied upon any other evidence, Plaintiffs have failed to demonstrate that there are any material facts in dispute.

### B.    Plaintiffs cannot make out a claim under the DTPA.

Plaintiffs have never previously alleged that Hoeber made any false statements, but rather only that Tuna had not known that Hoeber was no longer working with JFS.[35] But now, having completely failed to develop any evidence leading to a duty to disclose, and facing summary judgment, Plaintiffs have come forward with post-discovery declarations in an attempt to change their theory of the case. However, as noted above, these new declarations are not admissible evidence because they rely on hearsay, parol evidence, and statements not made from personal knowledge—most of which come from witnesses that were not disclosed during the discovery period—and all of which contradict prior sworn statements of the Plaintiffs. In other words, sham affidavits.

Additionally, Plaintiffs have offered no evidence for the bare assertion that Tuna was an agent of JFS. In fact, Plaintiffs' deposition testimony makes it clear that no agency relationship ever existed and certainly did not exist in 2020. For example, in his 30(b)(6) deposition, Joseph Friedheim testified that it was his stepson, Cassamo who hired Tuna.[36] Iasmin Friedheim testified that her son never worked for JFS and that the payments to him were only made on the basis of "momma send

---

[35] 2nd Am. Compl. at ¶¶38-39, ECF No. 18.
[36] Defs.' App. 47, J. Friedheim, 30(b)(6) Dep. at 45:21-25.

him what he needed."[37] Moreover, it would be highly unusual for an independent illustrator like Tuna, doing business under his own moniker, "Tuna Design & Illustration,"[38] to have an agency relationship with his client. Regardless, Plaintiffs both testified that Tuna ceased doing any work for them in 2015.

Plaintiffs have still not shown that they are "consumers" for purposes of the DTPA. Plaintiffs have admitted that they never paid Tuna in full and never even sought an assignment from him.[39] Thus, they cannot say that the assignment from Tuna in 2020 qualifies them as "consumers" just because they worked with Tuna in 2015.

Finally, Plaintiffs have never articulated any way that they have been unjustly harmed or damaged by the assignment. When asked, neither Iasmin nor Joseph Friedheim (as the 30(b)(6) representative of JFS) could articulate any amount of actual damages they either could claim or were claiming.[40] Moreover, Plaintiffs cannot simultaneously claim that Hoeber tricked Tuna out of his copyright while at the same time claim that Tuna never owned any copyrights, yet still claim to be damaged.

C.  **Plaintiffs' misstatements to the Copyright Office were deliberate.**

Plaintiffs have admitted that Joseph Friedheim was not the author of the work that was registered under copyright Registration No. VA 2-182-743 and could not support an argument that it was a work for hire.[41] Yet when Joseph Friedheim applied for his registration, he falsely represented

---

[37] Defs.' App. 278, I. Friedheim Dep at 98:17
[38] *See* Defs.' App. 147, J. Friedheim 30(b)(6) Dep. at 145:5-16.
[39] Defs.' App. 233, I. Friedheim Dep. at 53:15-16; Defs.' App. 59, J. Friedheim, 30(b)(6) Dep. at 57:5-16.
[40] Defs.' App. 96 - 97, J. Friedheim, 30(b)(6) Dep. at 94:21–95:6.
[41] 2nd. Am. Compl. at ¶ 12 ("Tuna created the label art, logo, and other marketing materials for JFS in 2015"); *see also* ¶ 44 ("The Declaration of Joseph Friedheim is attached as Exhibit D and incorporated by reference as testimonial evidence in support of Plaintiffs' claims."); Ex. D Declaration of Joseph Friedheim.

that he was the author.[42] Misstatements don't get more deliberate than that. The copyright office would not have issued the registration if it knew that Friedheim was not the author.[43] Therefore, Defendants are entitled to summary judgment on the invalidity of copyright Registration No. VA 2-182-743.

D. **There is no evidence to support Plaintiffs' defense of Unclean Hands and this affirmative defense was not plead.**

Plaintiff argues that Defendants should not be entitled to an award of attorneys' fees because Defendants have unclean hands. But Plaintiffs have not submitted any admissible evidence to support such a claim. Additionally, Plaintiffs' Answer to the Intervenor's Complaint did not plead any affirmative defenses. Now, for the first time, Plaintiffs are attempting to make this affirmative defense. Moreover, even if they had plead this affirmative defense, unclean hands is an equitable defense that must be pled with the specific elements required to establish it.[44] Therefore, not only was this affirmative defense never plead, Plaintiffs produced no evidence to support such a defense prior to the close of discovery.

Plaintiffs abandoned their copyright infringement cause of action because it was indefensible and would not have survived the motion to dismiss. It was not supported by the law, or the facts, and Plaintiffs were not making a good faith argument for an extension, modification or reversal of existing law. It was, by definition, frivolous.[45] And then they replaced it with another cause of action that was equally frivolous and did not survive a motion to dismiss.

---

[42] 2nd. Am. Compl. at Ex. C, ECF No. 18 (Page 86 of 89).
[43] *See* U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 309.2 (3d ed.2021) ("Knowingly making a false representation of a material fact in an application for copyright registration, or in any written statement filed in connection with an application, is a crime that is punishable under 17 U.S.C. § 506(e).").
[44] *Software Publrs. Ass'n v. Scott & Scott, Ltd. Liab. P'ship*, No. 3:06-CV-0949-G ECF, 2007 U.S. Dist. LEXIS 59814, at *7 (N.D. Tex. Aug. 15, 2007)(*quoting Reis Robotics v. Concept Industries, Inc.*, 462 F. Supp. 2d 897, 907 (N.D. Ill. 2006).
[45] *See Love v. Circle K Corp.*, Cause No. SA-85-CA-2169, 1986 U.S. Dist. LEXIS 21682, at *1-2 (W.D. Tex. Aug. 11, 1986) (discussing Rule 11).

### III.  CONCLUSION

Rather than present competent summary judgment evidence, Plaintiffs have produced nothing more than a smokescreen of sham affidavits. The declarations are filled with hearsay, hearsay within hearsay, statements not made from personal knowledge, opinions, legal conclusions, and parol evidence. And most of them are from witnesses who were never even disclosed prior to the end of the discovery period. None of these witnesses were available for depositions, and none of them will be appearing at trial. But even if these declarations were admissible in their own right, they would still meet the definition of sham affidavits because they directly contradict the Plaintiffs' past sworn statements.

Because Plaintiffs cannot establish the essential elements of their copyright invalidity, fraud, and DTPA claims, and cannot establish any damages arising out of those claims, Defendants are entitled to judgment as a matter of law on all remaining claims asserted in the Second Amended Complaint.

For all these reasons, Defendants respectfully request that the Court grant their motion for summary judgment on Plaintiffs' remaining claims of copyright invalidity, fraud and violations of the DTPA, award Defendants their attorneys' fees as the "prevailing party" on the abandoned copyright claims and grant such other and further relief to which Defendants may be entitled.

Dated: July 6, 2021 Respectfully submitted,

/s/ Brian Casper
Darin M. Klemchuk
Attorney-in-Charge
Texas State Bar No. 24037685
darin.klemchuk@klemchuk.com
Brian Casper
Texas Bar No. 24075563
brian.casper@klemchuk.com
Christian Cowart
Texas Bar No. 2410578
christian.cowart@klemchuk.com
**KLEMCHUK LLP**
8150 N. Central Expressway, 10th Floor
Dallas, Texas 75206
Telephone: 214.367.6000
Facsimile: 214.367.6001

**ATTORNEYS FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

The undersigned certifies that this document has been served on July 6, 2021, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

/s/ Brian Casper
Brian Casper