UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS - FORT WORTH DIVISION

| | |
|---|---|
| JOSEPH FRIEDHEIM, § | |
| IASMIN FRIEDHEIM, and § | |
| J.F. SOLUTIONS LTD., § | |
|     *Plaintiffs/Counter-Defendants* § | |
| v. § | |
| § | Civil Action No. 4:20-cv-335 |
| THOMAS HOEBER, and § | |
|     *Defendant/Counter-Plaintiffs* § | |
| HÖEBER MEDIA, LLC, § | |
|     *Defendant/Intervenor* § | |

**PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, WITH BRIEF INCORPORATED**

Pursuant to Rule 50(b), Plaintiffs Joseph Friedheim, Iasmin Friedheim, and J.F. Solutions Ltd. (JFS) (collectively, "Plaintiffs") file this Motion for Judgment as a Matter of Law disallowing Unjust Enrichment damages awarded by the jury and its conclusion that Joseph or Iasmin Friedheim committed "theft of services" against Höeber Media.

## I.    BACKGROUND

1.    Trial began November 1, 2021, and the verdict was delivered by jury November 2, 2021.

2.    In the "Implied Agreement" section of the verdict, the jury answered in the affirmative to, "Did Höeber Media ad Plaintiffs agree that Plaintiffs would give Thomas Hoeber an ownership interest in JF Solutions, or some other compensation if Thomas Hoeber continued to perform services for Plaintiffs?" Jury Verdict 5, ECF 102. Based on this finding, the jury awarded Höeber Media damages of $39,557 from JFS but no damages from Joe or Iasmin Friedheim. *Id.*

3.    In the next section of the verdict, which addressed unjust enrichment, the jury answered affirmatively to the question, "Do you find that Plaintiffs took undue advantage of Höeber Media." *Id.* at 19. For this claim, the jury awarded Höeber Media damages of $35,000 from JF Solutions, $5,000 from Joseph Friedheim, and $5,000 from Iasmin Friedheim. *Id.* at 6.

4.      In the last section of the verdict, the jury concluded that Plaintiffs committed theft of Höeber Media's services. *Id.* at 9.

5.      At trial, in a private conference with the Court, both parties moved the Court for judgment as a matter of law, which the Court deferred. *See* App 19 (Exhibit 2).

## II.    LEGAL STANDARD

6.      Entry of judgment as a matter of law is appropriate under Federal Rule of Civil Procedure 50(b) when there is "no legally sufficient evidentiary basis for a reasonable jury to have found" for the non-moving party on an issue. *Flowers v. S. Reg'l Physician Servs, Inc.*, 247 F.3d 229, 235 (5th Cir. 2001) (internal quotations omitted) (quoting *Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir.2000). The Court must "consider all of the evidence, drawing all reasonable inferences and resolving all credibility determinations in the light most favorable to the non-moving party. *Id.* (quoting *Brown v. Bryan County, OK.*, 219 F.3d 450, 456 (5th Cir.2000). In considering the evidence, the Court must "give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 337 (5th Cir. 2001) (quoting WRIGHT & MILLER § 2529).

## III.   ARGUMENTS AND AUTHORITIES

7.      Plaintiffs request the Court set aside the jury verdict awarding Höeber Media damages for unjust enrichment, which were awarded in addition to damages for breach of an implied agreement. Plaintiffs argue that, as a matter of law, Höeber Media may not be awarded both contractual damages *and* unjust enrichment damages. Alternatively, Plaintiffs request that the Court hold that Joe and Iasmin Friedheim may not be held personally liable for the unjust enrichment damages because all services performed by Höeber Media were for JFS.

### A. Höeber Media may not be awarded both contract and quasi-contract damages.

*Implied Agreement*

8. An implied agreement or implied contract is an agreement in which the acts of the parties indicate a mutual intention to contract based on the "course of dealing" and "common understanding." *Tubelite, Div. of Indal v. Risica & Sons*, 819 S.W.2d 801, 804 (Tex. 1991) (citing *Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters.*, 625 S.W.2d 295, 298 (Tex. 1981)). An implied contract and an express contract are the same except for the "character and manner of proof required to establish them." *McAllen Hosps., L.P. v. Lopez*, 576 S.W.3d 389, 392 (Tex. 2019) (internal quotations omitted).

*Unjust enrichment*

9. "A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (citing *Pope v. Garrett*, 211 S.W.2d 559, 560 (Tex. 1948)). "Unjust enrichment, itself, is not an independent cause of action but rather 'characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay.'" *Argyle Indep. Sch. Dist. v. Wolf*, 234 S.W.3d 229, 246 (Tex. App.—Fort Worth 2007, no pet.) (quoting *Friberg—Cooper Water Supply Corp. v. Elledge*, 197 S.W.3d 826, 832 (Tex. App.—Fort Worth 2006), rev'd on other grounds, 240 S.W.3d 869 (Tex. 2007) (per curiam).

10. Consequently, "when an express contract covers the subject matter of the dispute, generally there can be no recovery under a quasi-contract theory, such as unjust enrichment." *Glass v. Gilbert*, No. 01-14-00643-CV, 2015 WL 3905907, at *4 (Tex. App.—Houston [1st Dist.] June 25, 2015, no pet.) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684

(Tex. 2000)). A party may, however, plead a breach of contract claim and—in the alternative—allege a claim of unjust enrichment. *Johnson v. Wells Fargo Bank, NA*, 999 F. Supp. 2d 919, 929 (N.D. Tex. 2014) (citing *Taliaferro v. Samsung Telecomms. Am., Inc.*, No. 3:11–cv–1119–D, 2012 WL 169704, at *9 (N.D. Tex. Jan. 19, 2012)).

*Application*

11. Here, although the heading of the relevant section of jury instructions stated, "Implied Agreement," the jury verdict supports a finding that the parties had an *express* agreement.

12. First, Höeber Media alleged that JFS orally offered Thomas Hoeber a share of the company in exchange for Hoeber's services. Intervenor's Orig. Compl. ¶¶ 12, 14, 16, 21, 22, 98, 100, 106, 113, ECF No. 11. Such actions, if true, would constitute an *express* contract.

13. Second, The evidence presented by Höeber Media at trial and elicited by Plaintiff's cross-examination also supported finding there was an express oral agreement between the parties. For example, at trial, Thomas Hoeber, testifying for Höeber Media, made the following assertions:

   a. In 2016, when Hoeber began working for JFS, Hoeber was told by Joseph Friedheim that Hoeber "was going to be made a partner in the company or have some kind of ownership interest and that all of the expenses that Höeber Media was incurring would be reimbursed." Trial Tr. vol. 1, 14 (Exhibit 1, App. 3).

   b. ["Hoeber's] compensation was supposed to be one-third ownership in [JFS]." *Id.* at 22 (Exhibit 1, App. 4).

   c. Hoeber and JFS had a "verbal agreement on what [Hoeber's] involvement would be." *Id.* at 25 (Exhibit 1, App. 5).

   d. ["Hoeber] was under the impression that [he] was entering into a successful partnership with a company . . ." *Id.* at 26 (Exhibit 1, App. 6).

  e. "[Hoeber] was told that [he] was going to be provided some compensation. That compensation was an ownership interest in their company." *Id.* at 31 (Exh. 1, App. 7).

  f. "[The parties] had a verbal agreement." *Id.* at 32. (Exhibit 1, App. 8).

  g. "Iasmin Friedheim told [Hoeber] in 2018 that [he] would get one-third of the company." *Id.* at 50. (Exhibit 1, App. 9).

  h. In 2019, the parties verbally agreed, once again, that Hoeber would be given a one-third interest in the company. In addition, the parties verbally agreed that JFS would pay a $12,000 fee that would be allocated to Chris Titze, a contractor for Höeber Media. Höeber Media sent JFS a monthly invoice for payment of the $12,000. *Id.* at 69–71 (Exhibit 1, App. 10–12).

14. Hoeber made the same assertions throughout trial that the work he performed for JFS was in exchange for an ownership interest in the company based on a verbal agreement between the parties. *Id.* at 172, 179, 211, 221 (Exhibit 1, App. 14–16).

15. Finally, the jury instructions in the "Implied Agreement" section stated, "It is alleged by Höeber Media that the contract was oral." Based on the evidence presented and these instructions, when asked whether JFS agreed to give Hoeber an ownership interest or some other compensation if Hoeber continued to perform services for JFS, the jury answered affirmatively. Thus, while the heading of the jury instructions read "Implied Agreement," the agreement alleged by Höeber Media, which the jury found did exist, was an *express* oral agreement. Therefore, because it was found that the dispute between the parties was covered by an express agreement, there can be no additional recovery under an unjust enrichment theory.

16. Moreover, Höeber Media's Original Complaint did not allege in its causes of action two separate claims for Implied Agreement and Unjust Enrichment. Rather, it claimed "Unjust

Enrichment for Rendered Services Under Texas Law" as a cause of action and included in this claim that "Joseph and Iasmin Friedheim continued promise payment [sic] and an ownership interest in JF Solutions to entice Höeber Media to continue working on their behalf." Intervenor's Orig. Compl. 18, ECF No. 11. Thus, Höeber Media's claims of an oral agreement and unjust enrichment were not two distinct causes of action under which it may recover.

17. A proper reading of the jury verdict form would be that the jury first had the choice to award Höeber Media damages based on an express oral agreement between the parties. Next, *if* the jury did not find that there was an oral agreement, it could move on to the next section regarding unjust enrichment. That section states, "*even if* you do not find that there was an implied contract, you may still award damages if you feel that the Plaintiffs were unjustly enriched by their actions towards Höeber Media." (emphasis added). Thus, if the jury found that there was no oral agreement between the parties as alleged by Höeber Media, the jury could *alternatively* award unjust enrichment damages based on a quasi-contractual obligation to repay. Instead, the jury incorrectly awarded both contractual and unjust enrichment damages.

18. Because the jury found there was an express agreement between the parties and Höeber Media was entitled to damages based on a breach of that agreement, Höeber Media cannot also receive a second award of damages for unjust enrichment. Under black letter Texas law, a party cannot recover damages under both a contract theory and a quasi-contract theory. Because the jury awarded Höeber Media both contractual and quasi-contract damages, Plaintiffs request the Court direct entry of judgment as a matter of law for only the $39,557 contractual damages award against JFS and disregard the improper extra-judicial unjust enrichment damages award.

### B. Alternatively, the evidence does not support finding Joe or Iasmin Friedheim liable in their personal capacity for unjust enrichment damages.

*Limited Liability*

19.     The ability of an individual to incorporate a business and thereby "shield himself from personal liability for the corporation's contractual obligations" is a "bedrock principle of corporate law." *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006). However, in limited circumstances, a corporate shareholder may be liable under a veil-piercing or "alter ego" theory. "To pierce the corporate veil and impose liability under an alter ego theory of liability . . . a plaintiff must show: (1) that the persons or entities on whom he seeks to impose liability are alter egos of the debtor, and (2) that the corporate fiction was used for an illegitimate purpose." *Tryco Enters. v. Robinson*, 390 S.W.3d 497, 508 (Tex. App.—Houston [1st Dist.] 2012, pet dism'd). The corporate fiction may be disregarded if the corporation was used for the purpose of perpetuating an "actual fraud." *Id.* at 527. Actual fraud involves "dishonesty of purpose or intent to deceive". *Id.* (quoting *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986)).

20.     Similarly, members of limited liability companies (LLCs) are not liable for liabilities of the company. Tex. Bus. Orgs. Code Ann § 101.114. Texas courts have applied the same principles for piercing the LLC veil that is applied to corporations. *Chico Auto Parts & Serv., Inc. v. Crockett*, 512 S.W.3d 560, 571 (Tex. App.—El Paso 2017, pet denied). Thus, a plaintiff attempting the pierce the veil of an LLC must prove that the LLC member used the LLC to perpetuate an actual fraud. *Id.* at 571–572. Further, a party alleging a veil-piercing theory must "affirmatively plead the proper elements of its theory . . . failure to do so waive[s] its alter ego claims." *Id.* (citing *Mapco, Inc. v. Carter*, 817 S.W.2d 686, 688 (Tex. 1991)).

*Application*

21. Höeber Media presented no evidence at trial regarding an agreement with either Joseph or Iasmin Friedheim in their personal capacity. On the contrary, all services performed by Höeber Media were for JFS. E.g., Höeber Media's Complaint states, "As an enticement to keep Höeber Media working *for JF Solutions* on the promise that he would have an ownership stake in the company, Joe Friedheim agreed to give Hoeber the title of 'Executive Director of Brand Development' and a 'thomas@jf.solutions' e-mail address." Intervenor's Orig. Compl. ¶ 14, ECF No. 11 (emphasis added). Additionally, the Complaint states, "Höeber Media gave *JF Solutions* a significant discount on its services based on a promise of an ownership interest in the company in exchange for the reduced rates." *Id.* at ¶ 17 (emphasis added). The Complaint also states, "Among the work that was completed and delivered *to JF Solutions* was collection of off premise merchandise materials and guides . . ." *Id.* at ¶ 36 (emphasis added). Likewise, the evidence presented at trial showed that the Friedheims were acting on behalf of the LLC when working with Höeber Media. Testimony given by Höeber Media admitted that Joe and Iasmin personally owed Höeber Media no compensation in their individual capacity:

> Q. (By Plaintiff's attorney). . . So all the work you performed for the plaintiff was for JFS; is that correct?
>
> A. (By Thomas Hoeber) It was for J.F. Solutions. J.F. Solutions commissioned the work.
>
> Q. Right. And when you sent invoices, they were to JFS, correct?
>
> A. That's correct.
>
> Q. So even though the money sometimes flowed from Iasmin, you understood that you were always getting paid for JFS work, correct?
>
> A. Yes.

```
Q. . . . So all the money you were paid was for work that
had to do with JFS, the organization, the business?

   A. That's correct.

Q. Okay. And you believe JFS is what owes you money,
right?

   A. Yes.

Q. Does Iasmin owe you money?

   A. I believe they're owners, JFS do owe me money,
   yes.
```

Trial Tr. vol. 1, 87 (Exhibit 1, App. 13). This testimony highlights Hoeber's that JFS owed money; at no point stated that either Joe or Iasmin Friedheim was personally liable to Höeber Media. Hoeber's consistent testimony supports liability only against JFS.

22.     Any agreements made by the Friedheims with Höeber Media were made in their capacity as members of JFS, which is organized as an LLC under the laws of Texas. Even if Joe and Iasmin Friedheim did agree to give Hoeber a share of the company, all consideration allegedly given by Höeber Media was in the form of services performed for JFS—not to Joe or Iasmin Friedheim in their personal capacity. Höeber Media testified that Höeber Media provided services for JFS, and no evidence was presented at trial supporting a finding that any work performed by Höeber Media was for the benefit of Joe or Iasmin Friedheim, other than indirectly as members and managers of the LLC.

23.     Additionally, Höeber Media may not recover unjust enrichment damages from the Friedheims under a veil-piercing theory. Höeber Media did not affirmatively plead the elements of a veil-piercing theory and the evidence at trial did not attempt to try the matter by consent. Thus, any late-breaking claim that JFS was an alter ego of the Friedheims was waived by Höeber

Media. Further, the jury found that JFS was not fraudulent in its dealings with Höeber Media, negating the element of actual fraud required under a veil-piercing theory.

### C. Without piercing the corporate veil, the jury's conclusion that Plaintiffs committed theft of Höeber Media's services must be set rejected.

24. Based on the above arguments and evidence, the jury's conclusion regarding theft of services against the individuals, Joseph and Iasmin Friedheim must also be set aside, as Höeber Media never provided services to either individual.

## IV. CONCLUSION

25. For the reasons stated above, the Court should disregard the portion of the jury verdict awarding Höeber Media damages for unjust enrichment in its judgment. Alternatively, the Court should disregard the portion of the jury verdict holding Joe and Iasmin Friedheim liable in their personal capacity for the unjust enrichment damages.

26. Similarly, the jury's conclusions regarding Joseph and Iasmin Friedheim liability for theft of services must be set aside and be no part of the judgment.

WHEREFORE, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for judgment as a matter of law as herein described.

Respectfully submitted,

>Norred Law, PLLC
>*/s/ Warren V. Norred*
>Warren V. Norred, Texas Bar No. 24045094, wnorred@norredlaw.com
>515 E. Border Street; Arlington, Texas 76010
>Tel. (817) 704-3984; Fax. (817) 524-6686
>Attorney for Plaintiffs

**CERTIFICATE OF SERVICE** - I certify that this document was served on all parties seeking service in the instant case via the Court's e-file system on December 14, 2021.

>*/s/ Warren V. Norred*
>Warren V. Norred